DONALD L. MURPHY et ux., appellees, v. FRANKLIN COUNTY, employer, and ALLIED MUTUAL INSURANCE COMPANY, insurance carrier, appellants.

No. 52165.

704

October 18, 1966.

Larson & Carr, of Charles City, for appellants.

Hobson, Cady & Drew, of Hampton, for appellees.

Becker, J.—Claimant parents filed claim as dependents

under the Workmen's Compensation Act, Code, 1966, chapter 85. Ronald Murphy, their 17-year-old son, was killed in a tractor accident while working as a weed mower for Franklin County. The sole issues in this case are claimants' status as dependents and, if dependents, the amount of compensation awarded.

The matter was tried before a Deputy Industrial Commissioner who found that claimants were dependent in some degree upon decedent and determined the amount of statutory earnings contributed to be 50 percent. Upon filing of petition for review the Industrial Commissioner affirmed the award in similar language. Upon appeal to the District Court of Franklin County, the Commissioner's Review Decision was affirmed and the appeal dismissed.

 I. "The commissioner's findings of fact have the same standing as a jury verdict. It is our duty to examine the evidence to determine whether it is sufficient to support the factual conclusion of the commissioner. Sister Mary Benedict v. St. Mary's Corporation, et al, 255 Iowa 847, 849, 850, 124 N.W.2d 548." Crees v. Sheldahl Telephone Co., 258 Iowa 292, 294, 139 N.W.2d 190.

The evidence reveals that at the time of his death Ronald was a high school junior who had been working for the county during the prior six weeks of the summer months. He lived with his parents on a 436-acre farm that his parents occupied as tenants (140 acres pasture, 76 acres in government program, the rest tillable). The family consisted of four boys; decedent, a younger brother, age 14, and twin brothers, age 13. When claimants moved to this farm they had to go into debt for additional stock and machinery. At the time of Ronald's death they had a herd of dairy and stock cows; raised 70 to 100 hogs a year and had a full line of machinery, some of which was old. Mr. Murphy stated that his total indebtedness is about $1600 to $1800. His net income in 1962 or 1963 was $3000.

Ronald intended to finish high school during the following year. The question of further education had not been decided.

 II. Section 85.42, Code, 1966, deals with conclusively

presumed dependents. Prior to 1961 subsection 3 of that statute read: "A parent of a minor who is receiving the earnings of the employee at the time when the injury occurred. Stepparents shall be regarded as parents." The Fifty-ninth General Assembly repealed subsection 3. The Industrial Commissioner correctly held that it is now necessary for the parents to prove total or partial dependency under section 85.44 which reads: *"Payment to Actual Dependents.* In all other cases, questions of dependency in whole or in part shall be determined in accordance with the facts as of the date of the injury; * * *."

III. The heading as set out above appears to have been editorially added as it did not appear in the Acts of the Thirty-fifth General Assembly, chapter 147, section 17(c)(5) when the section was first promulgated by the legislature.

Defendants place great stress on the definition of dependency, citing Serrano v. Cudahy Packing Co., 194 Iowa 689, 690, 190 N.W. 132. "What is the meaning of dependency? Clearly a person cannot at the same time be dependent and self-sustaining. The definition of *dependent* as found in Webster's Dictionary is: 'Relying on, or subject to, something else for support; not able to exist, or sustain itself; not self-sustaining.' This definition has found judicial approval in many cases. *See Rock Island Bridge & Iron Works v. Industrial Com.,* 287 Ill. 648 (122 N.E. 830)."

We note, however, that the court follows this rather restrictive definition with the following: "No person can be regarded as a dependent 'whose financial resources at his command or within his power to command by the exercise of such efforts on his part as he reasonably ought to exert in view of the existing conditions are sufficient to sustain himself and family in a manner befitting his class and position in life without being supplemented by the outside assistance which has been received or some measure of it.' * * * No one is a dependent within the meaning of our Compensation Act who has sufficient means at hand to supply present necessities, rating them according to the dependent's class and position in life. *Blanton v. Wheeler & Howes Co.,* 91 Conn. 226."

Thus dependency is related in this state to the dependent's station in life. This appears to be the rule in the

great majority of jurisdictions.

██ "A showing of actual dependency does not require proof that, without decedent's contributions, claimant would have lacked the necessaries of life. The test is whether his contributions were relied on by claimant to maintain claimant's accustomed mode of living.

"It follows that income from other sources is not necessarily inconsistent with a state of actual dependency." Larson, Workmen's Compensation Law, Volume II, section 63.11, page 102, and cases cited.

██ " 'Dependency' and 'support' under the workmen's compensation law are not capable of certain definition. The definition and application of these words should not be too severely restricted. *If a contribution is made to the ordinary comforts and conveniences which are reasonably appropriate to parties in their station in life, it should be considered as support and the recipient regarded as a dependent."* (Emphasis in opinion) Lighthill v. McCurry, 175 Neb. 547, 552, 122 N.W.2d 468, 471.

IV. Decedent's most obvious contribution to his parents was in cash. Before working for the county Ronald raised his own hogs in 1963 and 1964. In 1963 he sold hogs to pay a $704.65 hospital bill due on account of his mother's illness. As she put it, "so they could get me home." Later he drew all of the rest of his money from raising hogs from the bank and paid $400 toward the purchase of a family car.

He was paid twice while working for the county. His mother testified in detail as to the use of his wages. He bought clothing for himself, gas for the family car, contributed $24 toward new tires, gave his three younger brothers $15 each to be used for school clothes.

While evidence of the parents' financial status was not complete or detailed as it might have been, it is clear that this family was not affluent, had substantial debts and the normal burdens of a farm family of six. The financial contributions were substantial.

"In determining whether dependency in fact existed, regard may be had as much for the way of life disclosed by the evidence as to a mathematical balancing of accounts." Colby v. Varney,

97 N. H. 130, 134, 82 A.2d 604.

The fact that a part of these contributions went for decedent's own necessities does not militate against consideration of such help in determining the plaintiff's necessities, for "the parents were relieved of these various items of expense and hence received the full benefits of the deceased minor's earnings." Harvey v. Rocklin Mfg. Co., 237 Iowa 1058, 1061, 24 N.W.2d 402. While this case was decided before the repeal of section 85.42(3) noted in Division II, we adhere to the principle in determining the fact of dependency as distinguished from the extent of partial dependency. The rule is unaffected by the repeal of subsection 3, and is recognized in such works as Larson, Workmen's Compensation Law, Volume II, section 63.22, page 108: "On the same reasoning, parents may be dependent on the unemancipated minor when the minor spends all his earnings on his own requirements, or even costs more to support than the earnings he brings home, since, to the extent that he does contribute, he aids his parents in discharging a legal obligation to himself."

V. Ronald's contributions to his parent's mode of living were not limited to cash. "Services rendered by a son to enable his father to carry on his farm are as much contribution to the support of the father as cash which would have enabled the father to hire a man to do the work." Thunder Lake Lumber Co. v. Industrial Commission, 188 Wis. 418, 421, 206 N.W. 177, 178. Both parents, the only witnesses used in the case (and called by both sides), attest to the quantity and quality of their son's farm work. Mr. Murphy testified: "Ronald was very reliable. He just went on and did the chores. When we was working he just worked. Whatever there was to do on the farm, he could do it. He was very willing. We relied on Ronald's labor and on his earnings and on the things he produced to keep the family going. * * * He worked at home until he went to work for them (the County). He didn't earn his school expenses before last summer. He was working on the farm. He plowed. He did everything a man can do. He did everything I did. He didn't earn money that he turned into us for our support:

This summer he was going to try to earn the money to pay his expenses in school."

Both parents testified that without their son's efforts hired help would be necessary at a financial sacrifice. In a factually similar case the Supreme Court of Vermont concluded "the evidence supports a finding that the loss of the contribution [farm labor] from the son substantially reduced the income-producing ability of the family and thereby adversely affected their standard of living. This is a sufficient foundation for the verdict rendered in this case." Jewell v. Olson Constr. Co., 122 Vt. 434, 437, 175 A.2d 509, 511.

VI. Having correctly found financial dependency, the commissioner then had to determine the degree of dependency, or more properly, the percentage of weekly compensation payable under section 85.31, Code, 1966:

"3. If the employee leaves dependents only partially dependent upon his earnings for support at the time of the injury, the weekly compensation to be paid as aforesaid, shall be equal to the same proportion of the weekly payments for the benefit of persons wholly dependent as the amount contributed by the employee to such partial dependents bears to the annual earnings of the deceased at the time of the injury."

This determination is related to the percentage of wages determined to have been contributed to the dependents' welfare. It has no relation to the percentage of the dependents' total income, nor does it take into account other benefits received by the dependents from additional efforts, such as farm work or work around the home which would otherwise have to be hired.

Defendants argue that the cost of supporting the decedent should be deducted from his contributions in considering the fact of dependency as well as the weekly compensation to be paid, citing Peterson v. Thief River Falls Welding Co., 245 Minn. 212, 72 N.W.2d 75. In that case the decedent was apparently an adult living with his parents. As to unemancipated minors, such a rule is inconsistent with the principles announced in Division IV. Further, as to the amount of weekly compensation to be paid, the Minnesota statute is keyed to the income

of the dependent. The Iowa statute is keyed to the wages of the employee. Thus the Peterson case is not analogous to the latter problem.

The record would indicate that at least 50 percent of the two paychecks received by Ronald went for necessities for himself and the family. Since the record clearly supports an award of at least 50 percent under the statutory formula, the trial court correctly sustained the commissioner.—Affirmed.

All JUSTICES concur.