Maxine McCLURE, Claimant-Appellee,

v.

UNION, ET AL., COUNTIES, Employers,
et al., Defendants-Appellants.

No. 54529.

Supreme Court of Iowa.

June 17, 1971.

Davis, Johnson, Burt & Davis, Des Moines, for defendant-appellants Taylor, Union & Ringgold Counties and Iowa National Mutual Ins. Co.

Hopkins, Bump & Huebner, Des Moines, for defendants-appellants Adams County and Employers Mutual Casualty Co.

Patterson, Lorentzen, Duffield, Timmons & Irish, Des Moines, and Hoffman & Hoffman, Leon, for claimant-appellee.

MOORE, Chief Justice.

Defendant counties and their insurance carriers appeal from trial court's judgment sustaining the industrial commissioner's allowance of workmen's compensation benefits to the widow of Elvin Gale McClure, a juvenile court probation officer.

Defendant-appellants assert the trial court erred in that (1) claimant's decedent was not an employee of defendant counties (2) claimant's decedent was an employee of the Third Judicial District of Iowa and not within the purview of the workmen's compensation act unless it be concluded he was a law-enforcement officer (3) claimant's decedent was a law-enforcing officer within the meaning of Code section 85.62 and the State is responsible for compensation to claimant and (4) at the time of the accident which caused decedent's death he was not in the course of his employment.

I. Supported by citation of our earlier cases we in Henderson v. Jennie Edmundson Hospital, Iowa, 178 N.W.2d 429, 431 (June, 1970) recognized the following principles of law as applicable in this type of cases.

The industrial commissioner's findings of fact are conclusive where the evidence is in dispute or reasonable minds may differ on the inferences fairly drawn from the facts. Such findings have the same standing as a jury verdict. However, where the facts are not in dispute and different inferences could not be reasonably drawn therefrom, it becomes a question of law and the court is not bound by the commissioner's findings or conclusions.

It is the commissioner, not the court, who weighs the evidence and his findings will be broadly and liberally construed to uphold, rather than defeat, his decision.

As to Code section 85.61(2) which provides: " 'Workman' or 'employee' means a person who has entered into the employment of, or works under contract of

service, express or implied, or apprenticeship, for an employer, except as hereinafter specified.", there is no legal distinction between the phrases "a person who has entered into employment of (an employer)" and "(who) works under contract of service, express or implied". In other words, employment implies the required contract on the part of the employer to hire and on the part of the employee to perform services.

■ The factors by which to determine whether an employer-employee relationship exists are (1) the right of selection, or to employ at will (2) responsibility for the payment of wages by the employer (3) the right to discharge or terminate the relationship (4) the right to control the work, and (5) is the party sought to be held as the employer the responsible authority in charge of the work or for whose benefit the work is performed. In addition thereto we recognize the overriding element of the intention of the parties as to the relationship they are creating may also be considered.

II. Examination of the evidence before the commissioner is now necessary. On January 1, 1968 claimant's husband, Elvin Gale McClure, was appointed juvenile probation officer pursuant to the provisions of Code section 231.8. His appointment was made by the joint order of the three judges of the third judicial district comprised of Adams, Clarke, Decatur, Ringgold, Taylor, Union and Wayne Counties. He was responsible to the three judges as they served as Juvenile Court Judges from time to time. Judge Bown testified McClure's employer was the seven counties of the Third Judicial District. He was paid on a prorata basis by each of the seven counties which he served. His expenses incurred in performance of his duties were likewise prorated. He lived in Creston and had an office there in the Union County courthouse. In addition to using his own car he at times rode with peace officers in the various counties while checking on juvenile parolees. He spent much of his time in Creston, the largest town in the seven counties. Creston had a midnight curfew ordinance.

McClure was required to give attention to his duties at any hour of the day or night. His duties as a juvenile probation officer required he be out at night checking on juveniles, their activities with liquor and hours kept. Prior to October 18, 1968 Judge Kittleman directed McClure to check the activities of a named juvenile and whether she was getting liquor from a named reputed bootlegger in Creston.

Approximately midnight October 18, 1968 McClure went to the Creston police station and shortly thereafter left in a patrol car driven by City Policeman Kessler. At McClure's suggestion they went to the corner of Elm and Clark Streets looking for a reported party involving juveniles and liquor. No such party was found. They then drove near the premises of the reputed bootlegger but found no activity there. After having coffee and discussing juveniles with the sheriff and a highway patrolman Kessler and McClure resumed driving around Creston. McClure was observing whether any of his juvenile parolees were on the streets. While so engaged Kessler received a radio message pertaining to a possible speeding violation. In responding to call the patrol car was struck by another automobile. From injuries received in this accident McClure died. Ironically the other vehicle was driven by a 17-year old boy then on probation. Officer Kessler testified that at the time of the accident he was continuing on his normal police patrol and McClure was checking to see if any of his parolees were out.

Code section 231.1 established in each county a juvenile court. Section 231.2 provides: "How constituted. The juvenile court of each county shall be constituted as follows:

"1. Of the judges of the district court.

"2. In counties wherein there is a superior or municipal court, of the judges thereof, respectively, when designated as

judges of the juvenile court by the judges of the district court."

As pertinent here section 231.8 provides: "Probation officers—salaries. The judge designated as judge of the juvenile court in any county, or where there is more than one judge designated such judges acting jointly, may appoint such probation officers as may be necessary to carry out the work of the court. * * *

"Probation officers may be appointed to serve two or more counties. The salaries of such officers and their deputies, if any, shall be fixed by the judges of the judicial district containing such counties and such salaries and the expenses of the probation offices shall be prorated among the counties served in such proportion as may be determined by said judges who shall in making such determination, consider the volume of work in the several counties. * * *."

Section 231.10 provides: "Powers and duties—office and supplies. Probation officers, in the discharge of their duties as such, shall possess the powers of peace officers. They shall be furnished by the county with a proper office and all necessary blanks, books, and stationery. It shall be the duty of said probation officers to make such investigation as may be required by the court; to be present in court in order to represent the interests of the child when the case is heard; to furnish to the court such information and assistance as the judge may require, and to take such charge of any child before and after trial as may be directed by the court."

Three defendant counties, Clarke, Decatur and Wayne, have not appealed from the trial court's judgment which includes sustaining the industrial commissioner's finding McClure was an employee of each of the seven counties. The other four counties, appellants here, argue McClure was an employee of the Third Judicial District. We do not agree.

Under the statutes a juvenile court is established in each county. In appointing and supervising McClure the judges acted on behalf of each county and not on behalf of the Third Judicial District of Iowa. Applying the quoted factors for determining whether an employer-employee relationship exists we hold the industrial commissioner's finding the seven counties were McClure's employers is supported by substantial evidence.

III. Appellants' assertion McClure was an employee of the Third Judicial District is decided adversely to them by our holding in division II. The question of whether McClure was acting as a law-enforcing officer is reached in our next division.

IV. Appellants argue McClure was acting as a law-enforcing officer and therefore any compensation should be paid out of the general fund of the State under Code section 85.62. It provides: "Peace officers. Any policeman (except those pensioned under the policemen's pension fund created by law), any sheriff, marshal, constable, state highway patrolman, conservation officer, and any and all of their deputies and any and all other legally appointed or elected law-enforcing officers, who shall sustain an injury while performing the duties of a law-enforcing officer and from causes arising out of and in the course of his official duty, or employment as a law-enforcing officer, become temporarily or permanently physically disabled or if said injury results in death shall be entitled to compensation for all such injuries or disability together with statutory medical, nursing, hospital, surgery and funeral expenses, and where the officer is paid from public funds said compensation shall be paid out of the general fund of the state. * * *"

It must be noted the statute does not specifically include probation officers. The problem presented is whether McClure was covered under the general phrase which follows those that are specifically enumerated. This we believe is primarily

a question of law based on interpretation of several statutes.

Code section 231.10 quoted, supra, grants to probation officers in the discharge of their duties the powers of peace officers. The section then defines the duties of probation officers,—"to make such investigation as may be required by the court; to be present in court to represent the interests of the child when the case is heard; to furnish to the court such information and assistance as the judge may require, and to take such charge of any child before and after trial as may be directed by the court."

The duties of a juvenile court probation officer are vastly different than those imposed on peace officers under Code section 748.4 which provides: "Duties. It shall be the duty of a peace officer and his deputy, if any, throughout the county, township, or municipality of which he is such officer, to preserve the peace, to ferret out crime, to apprehend and arrest all criminals, and insofar as it is within his power, to secure evidence of all crimes committed, and present the same to the county attorney, grand jury, mayor or police courts, and to file informations against all persons whom he knows, or has reason to believe, to have violated the laws of the state, and to perform all other duties, civil or criminal, pertaining to his office or enjoined upon him by law. Nothing herein shall be deemed to curtail the powers and duties otherwise granted to or imposed upon peace officers."

Section 231.10 grants to a juvenile probation officer the powers of a peace officer but does not impose the duties of a peace officer on him. His duties are clearly defined in section 231.10.

As we point out in Re Interest of Morrison (Morrison v. State), 259 Iowa 301, 305, 144 N.W.2d 97, 99, the provisions of Code chapter 232 were enacted more for the purpose of assisting unfortunate children than for punishing them. Its purpose is to insure a child the care, custody and discipline that should be given by its parents.

It seems clear McClure in his position as juvenile court probation officer was, under the facts, exercising his duties prescribed by section 231.10 and was, when injured, exercising the parental authority vested in the juvenile court. He was not then acting as a peace officer or "performing the duties of a law-enforcing officer" as required by section 85.62 in order to have compensation paid out of the general fund of the State.

V. To be compensable an employee's injury must occur "in the course of employment" and also "arise out of it". Code section 85.3(1). The burden rests on claimant to establish these factors. Crees v. Sheldahl Telephone Co., 258 Iowa 292, 297, 139 N.W.2d 190, 193.

We have frequently said "in the course of" the employment refers to time, place and circumstances of the injury. "Arising out of" relates to the cause and origin of the injury. An injury occurs in the course of employment when it is within the period of employment at a place where the employee reasonably may be performing his duties, and while he is fulfilling those duties or engaged in doing something incidental thereto. Crees v. Sheldahl Telephone Co., 258 Iowa 292, 297, 298, 139 N.W.2d 190, 193, 194; Sister M. Benedict v. St. Mary's Corp., 255 Iowa 847, 853, 854, 124 N.W.2d 548, 552, and citations.

The deputy commissioner and the industrial commissioner on review found and held McClure sustained injuries (which caused his death) arising out of and in the course of his employment. The trial court affirmed and we agree.

The evidence and the authorities sustain the commissioner and trial court. The judgment of the trial court is affirmed.

Affirmed.

All Justices concur except REYNOLDSON, J., who takes no part.