**Dennis R. MYERS, Petitioner-Appellee,**

v.

**IOWA DEPARTMENT OF JOB SERVICE, Respondent,**

**and**

**Color Converting Industries, Respondent-Appellant.**

**No. 84–1088.**

Court of Appeals of Iowa.

June 25, 1985.

Peter C. Percival of Binford & Percival, P.C., Des Moines, for respondent-appellant Color Converting Industries.

Carolyn F. Coleman, Des Moines, for petitioner-appellee.

Heard by SNELL, P.J., and HAYDEN, and SACKETT, JJ., but considered en banc.

SACKETT, Judge.

Myers was involved in an altercation with a co-worker and was suspended for two days. A production supervisor for Color Converting Industries later held a meeting with Myers and the co-worker. At this meeting Myers agréed there would be no further problem between himself and the co-worker. However, Myers stated he would not take instructions from the co-worker who on occasion substituted for his foreman.

Myers claimed unemployment benefits. The claim was denied by the claims deputy. After an administrative hearing, the decision of the claims deputy was affirmed. The hearing officer, in his findings of fact, determined Myers had stated to the production supervisor he would not take orders from the co-worker and the co-worker was a lead man assistant to the foreman who took over the foreman's duties in the foreman's absence.

The Appeal Board of the Iowa Department of Job Service affirmed the decision denying benefits.

Upon Myers' petition for judicial review, the trial court made its own findings of fact. It determined the plant supervisor's conclusion that Myers refused to obey instructions was an argument with little weight as to the fact. The trial court concluded if Myers did state he would not obey an order from his co-worker that did not constitute misconduct. The trial court reversed the decision of the Appeal Board on the ground it made an error of law in finding misconduct on the part of Myers.

Color Converting claims the findings of fact by the Department of Job Service were supported by substantial evidence and the district court erred in not adopting the agency's findings of fact.

■ If supported by substantial evidence, the findings of fact made by the Iowa Department of Job Service are conclusive on the reviewing courts and have the same standing as a jury verdict. If, however, the facts are not in dispute and different inferences could not be reasonably drawn therefrom, it becomes a question of law and the court is not bound by the findings of fact or conclusions of the department. *McClure v. Union, Et Al., Counties,* 188 N.W.2d 283, 284 (Iowa 1971).

■ The fact that an agency could have drawn two inconsistent conclusions from the evidence does not mean that one of those conclusions is unsupported by substantial evidence. *Gipson v. Iowa Dep't of Job Serv.,* 315 N.W.2d 834, 837 (Iowa Ct. App.1981).

The employer has the burden of proving misconduct. *Billingsley v. Iowa Dep't of Job Serv.,* 338 N.W.2d 538, 540 (Iowa Ct. App.1983).

Myers concedes the findings of fact made by the agency are binding on the district court if supported by substantial evidence, but argues the findings of fact made by the trial court did not form the basis of the ultimate decision reached by the trial court.

■ The real issue as framed by both parties is whether a finding by the agency that Myers declared he would not take orders from his co-worker, when the co-worker was functioning in a supervisory capacity, is misconduct. When we review decisions of the district court which it rendered in its capacity as an appellate body under Iowa Code section 17A.19, the sole issue for us to determine is whether or not the district court correctly applied the law. To make that determination, we apply the standards of section 17A.19(8) to the agency action to determine whether our conclusions are the same as those of the district court. *Floyd v. Iowa Dep't of Job Serv.,* 338 N.W.2d 536, 537 (Iowa Ct.App.1983).

Myers argues that any erroneous findings made by the trial court were not relied upon by it in concluding there was no misconduct. He contends the trial court simply did not deem the agency's findings supported a misconduct disqualification and additionally the agency's application of law was erroneous.

Color Converting claims the trial court erred in holding Myers' statement to his production supervisor, that he would not take orders from his co-employee when his co-employee was in a supervisory position, was not misconduct. Myers claims an employee's statement as to future conduct does not constitute misconduct in the absence of any actual follow-through on the statement by the employee.

Iowa has not addressed the issue of whether statements as to future conduct can be misconduct. The Iowa Admin.Code

section 370–4.32(1) defines misconduct as follows:

> Misconduct is defined as a deliberate act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment. Misconduct as the term is used in the disqualification provision as being limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of employees, or in carelessness or negligence of such degree of recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed misconduct within the meaning of the statute.

This definition of misconduct was approved by the Iowa Supreme Court in *Huntoon v. Iowa Dep't of Job Serv.*, 275 N.W.2d 445, 448 (Iowa 1979). In addition to requiring that an employee's conduct be included within the above definition of misconduct, the agency rule also requires that the misconduct be a current act. Iowa Admin. Code § 370–4.32(8).

Myers' statement that he would not take orders was deliberate.

In order to support a disqualification from unemployment benefits, the misconduct must be substantial. *See Budding v. Iowa Dep't of Job Serv.*, 337 N.W.2d 219, 222 (Iowa Ct.App.1983).

The Commonwealth Court of Pennsylvania has considered this specific issue and determined, "willful misconduct can be established where an employee manifests an intent to disobey the reasonable instructions of his employer." *Sturniolo v. Commonwealth, Unemployment Compensation Bd. of Review,* 19 Pa.Cmwlth. 475, 338 A.2d 794, 796 (1975).

In *Unemployment Compensation Bd. of Review v. Ciotti,* 24 Pa.Cmwlth. 373, 356 A.2d 368 (1976), the claimant announced refusal to work without good reason on a day she knew she was scheduled to work. The statement of an intention to disobey instructions was determined to be misconduct despite the fact claimant was discharged prior to her actual failure to show up for a scheduled work day. *Id.,* 356 A.2d at 369.

■ An employer has the right to expect an employee to follow his directions whether the directions are delivered by the employer himself or by his designated agent. In the absence of a justified reason, is the refusal to follow an employer's instructions misconduct? While admittedly to have misconduct there must be a current act, there is no basis upon which to accept Myers' argument that we have to wait for the employee to act on his declared intent, i.e., to actually refuse to disobey an order before there can be good cause for discharge.

■ Myers made a direct assertion that he would not follow the order of his superior. We determine willful misconduct can be established where an employee manifests an intent to disobey the reasonable instructions of his employer. Myers made such an assertion here.

■ We reject Myers' argument that we consider his statement an isolated incident of relatively minor import as in *Budding,* 337 N.W.2d at 222–23. This court determined, in *Budding,* the action of an employee who "blew off a little steam" and called his supervisor a "dirty bitch" did not constitute misconduct of sufficient severity to deny unemployment benefits. In this situation Myers' statements were made the day after the altercation, during a meeting called to discuss the cause and resolution of the problem. *Id.*

We reverse the ruling of the district court and affirm the decision of the Iowa Department of Job Service.

REVERSED.

All Judges concur except OXBERGER, C.J., and SCHLEGEL, J., who dissent.

SCHLEGEL, Judge (dissenting).

I respectfully dissent.

We are here dealing with two separate and distinct acts and consequences. First, we are dealing with an employer's right to require the adherence of an employee to rules involving supervision by a superior, and the employer's right to terminate the employee who states that he will refuse to follow that procedure. Second, we are dealing with the same stated refusal, to determine if that statement constitutes misconduct that disqualifies the employee from receiving unemployment benefits upon discharge.

There had been a fight between claimant and Greg Blackburn, a co-employee (who was a lead employee and a foreman during those times when the regular foreman was gone). Following a two-day suspension of both employees, they were called into a meeting with their supervisor, Mr. Pinegar. The hearing officer found that claimant, at that meeting, responded to Pinegar's question by answering that he would not take orders from Mr. Blackburn. That finding is supported by substantial evidence. The district court and this court are bound by that finding. We are, therefore, confronted with the narrow issue as to whether claimant's statement that he wouldn't take orders from a co-employee who might be in a position to direct and supervise claimant's work constitutes misconduct as defined by the Administrative Code and Iowa cases.

We are not dealing with a claim that the employer, fearful that an employee's stated intent to refuse to take orders from a superior, had no right to safeguard against such a potential problem by discharging the employee. We are dealing with a claim that because claimant might, if the situation in the future presented itself, refuse to follow the discretion or supervision of his supervisor or foreman, the making of that statement constitutes misconduct. We are dealing with a situation where it is claimed that the possibility of future misconduct results in a claim of present misconduct and a denial of unemployment benefits. The majority finds that claimant's candor, in calling to the attention of the employer a problem between himself and the co-employee, not only results in the resolution of the problem by the discharge of the claimant, but that it was misconduct for him to make that disclosure. It is interesting to consider that Pinegar called the statement made by claimant insubordination. It couldn't be insubordination until he was ordered to do something, and from the record, it is clear that he was only asked *if he would take orders from Blackburn;* he was not *ordered* to take orders from Blackburn. His statement certainly constituted candor, but not insubordination.

There is no claim that claimant has no duty in the course of his employment to take orders from Blackburn, but neither was there any stated rule or implication, in the question asked by Pinegar, that claimant would be required to take orders from Blackburn or forfeit his job. Claimant's answer might have been different had that alternative been presented. The majority's holding is a clear invitation to an employee to be dishonest in his or her answer, rather than to let the employer know that this is still a problem that needs solution.

If we approve the doctrine espoused by the majority, that misconduct can be established by statements concerning future conduct, almost any claim for unemployment benefits can be defeated if it can be found that the employee was discharged for stating he would refuse to do some act in his employment that seems to him would be impossible of performance or completely outside the scope of his employment. While he might, at the time such direction was given, feel that it was detrimental to him and the employer's interests, the fact that he had expressed an intention to refuse its performance would constitute mis-

conduct. This would be true even if the very refusal expressed might well be the appropriate response when the order is given.

The rules require that the misconduct be a current act. The only current act in this case is a statement concerning some possible act in the future. That doesn't satisfy the rule. Neither do the cases cited by the majority stand as authority for the facts disclosed by this record.

The majority penalizes the claimant for his truthfulness and candor. I would hold that the department of job service committed an error of law in holding that the facts found by the hearing officer constitute misconduct.

I would affirm the district court.

OXBERGER, C.J., joins this dissent.