**Denise M. HENRY,
Petitioner-Appellant,**

v.

**IOWA DEPARTMENT OF JOB SERVICE, and Stewart's School of Hairstyling & Cosmetology, Respondents-Appellees.**

No. 85–1172.

Court of Appeals of Iowa.

June 4, 1986.

Lillian O. Taylor of Legal Services Corp., John F. Clemens, Sioux City, for petitioner-appellant.

Joseph L. Bervid, Walter F. Maley, Blair H. Dewey and David M. Keenan of Iowa Dept. of Job Service, for respondent-appellee Iowa Dept. of Job Service.

Heard by DONIELSON, P.J., and SCHLEGEL, and SACKETT, JJ.

SACKETT, Judge.

Petitioner Denise Henry appeals the district court's affirmance of an Iowa Department of Job Service ruling denying unemployment compensation benefits. Henry contends the district court erred: (1) as a matter of law in concluding that one isolated incident of carelessness was sufficient to find Henry had committed misconduct; and (2) in holding there was substantial evidence in the record to support the agency's finding of misconduct. We agree.

Henry worked as a part-time receptionist for Stewart's School of Hairstyling and Cosmetology from November 8, 1983, until February 6, 1984. She worked the evening shift on weekdays. Henry's duties as receptionist included making appointments, answering the telephone, receiving money and putting away the bulk of the day's cash receipts before leaving the salon. At the time Henry was hired she was not given formal training, written instructions or an employee's manual about job duties and responsibilities. Henry was told by the manager, however, that she would be fired if she was in the salon after working hours.

When Henry was first hired the salon manager showed Henry the procedures for putting away the daily cash receipts at the end of her shift. The procedures involved placing all the money, except that necessary to make change, in an envelope and stapling, signing and placing it in a spot for safekeeping since the salon did not have a safe.

Because of recent shortages in the cash receipts, a new policy of using a locking bank bag was implemented at the salon. On Saturday, February 4, 1984, the first day the new policy was in effect, Henry filled in for the regular receptionist. Henry testified later this was the first time she had worked the Saturday shift. At approximately 4 p.m., the end of Henry's shift, she placed the bulk of the cash receipts in the bank bag. Since some of the hair designers were still working, Henry asked another employee to place the balance of the receipts into the bag, lock it and put it away when she left. The other employee, however, left the bank bag unlocked and lying out rather than putting it away as she had agreed to do.

The following Monday, February 6, 1984, the salon manager discovered the open bank bag containing $1,300 which had a shortage of $50. The salon manager discharged Henry for failing to put away the February 4, 1984, cash receipts. The salon manager testified later that this was the first time Henry had not put away the receipts. The hearing record indicates Henry had not received any other warnings.

Henry filed for unemployment benefits following her termination. A claim's deputy decision dated February 21, 1984, held that Henry had been discharged for carelessness in performing her work and benefits were denied. Henry appealed and a hearing was held on April 11, 1984. The hearing officer affirmed, concluding that Henry's carelessness was of sufficient culpability to support a finding of wanton or willful disregard of the employer's interests. The hearing officer accordingly denied benefits on the ground that Henry's carelessness constituted misconduct within the meaning of Iowa Code § 96.5(2)(a) (1985). The appeal board upheld the hearing officer's decision.

On February 8, 1985, Henry filed a petition for judicial review asserting that the agency decision was affected by error of law and unsupported by substantial evidence. On July 9, 1985, the district court affirmed the final decision of the agency.

## I. Scope of Review

Our scope of review in cases arising out of the Iowa Administrative Procedure Act is limited under Iowa Code

§ 17A.20 to the correction of errors of law. *Boyd v. Iowa Department of Job Service,* 377 N.W.2d 1, 2 (Iowa App.1985). We review the decision of the district court, also rendered in an appellate capacity, and determine whether the district court applied the law correctly. *Endicott v. Iowa Department of Job Service,* 367 N.W.2d 300, 302 (Iowa App.1985). To make that determination this court must apply the standards of Iowa Code § 17A.19(8) (1985) to the agency action to determine whether this court's conclusions are the same as those of the district court. *Boyd,* 377 N.W.2d at 2. Iowa Code § 17A.19(8)(f) (1985) provides in a contested case the court shall grant relief from an agency decision which is not supported by substantial evidence in the record made before the agency when that record is viewed as a whole. *Myers v. Iowa Department of Job Service,* 373 N.W.2d 507, 509 (Iowa App. 1985). In making this determination we are limited to the record made by the hearing officer. *Boyd,* 377 N.W.2d at 2. We do not make an independent determination concerning the preponderance of the evidence. *Budding v. Iowa Department of Job Service,* 337 N.W.2d 219, 221 (Iowa App.1983).

▄ Evidence is substantial when a reasonable person would accept it as adequate to reach a conclusion. *Gipson v. Iowa Department of Job Service,* 315 N.W.2d 834, 837 (Iowa App.1981). The question is not whether the evidence might support a different finding but whether the evidence supports the findings actually made. *Boyd,* 377 N.W.2d at 2. The fact that two inconsistent conclusions can be drawn from the evidence does not mean that one of those conclusions is unsupported by substantial evidence. *Myers,* 373 N.W.2d at 509.

## II. *Misconduct*

Iowa Code § 96.5(2) (1985) provides that a claimant is disqualified from unemployment benefits if Job Service finds the individual has been discharged for misconduct in connection with the individual's employment.

The Iowa Administrative Code defines "misconduct" as:

[A] deliberate act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment. Misconduct as the term is used in the disqualification provision as being limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of employees, or in carelessness or negligence of such degree of recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed misconduct within the meaning of the statute.

370 Iowa Administrative Code § 4.32(1). The Iowa Supreme Court has accepted this definition as accurately reflecting the intent of the legislature. *Myers,* 373 N.W.2d at 510.

▄ Misconduct must be substantial in order to support a disqualification from unemployment benefits. *Newman v. Iowa Department of Job Service,* 351 N.W.2d 806, 808 (Iowa App. (1984). The employer has the burden of proving misconduct. *Eaton v. Iowa Department of Job Service,* 376 N.W.2d 915, 917 (Iowa App.1985). Misconduct serious enough to warrant discharge of an employee is not necessarily serious enough to warrant denial of unemployment benefits. *Eaton,* 376 N.W.2d at 917. As such, we do not examine the employer's right to discharge Henry. Rather, our sole task is to determine whether Henry is entitled to unemployment benefits.

*Billingsley v. Iowa Department of Job Service*, 338 N.W.2d 538, 540 (Iowa App. 1983).

■ The focus of the administrative code definition of misconduct is on acts or omissions by the petitioner which rise to the level of being deliberate, intentional or culpable. *Eaton*, 376 N.W.2d at 917. In order to establish misconduct that will disqualify petitioner from benefits, the employer must prove the acts culminating in discharge satisfy the requirements of the administrative code definition. As such, the acts must show:

1. *Willful and wanton disregard* of an employer's interest as is found in:

 A. Deliberate violation of standards of behavior which the employer has the right to expect of employees, or

 B. Deliberate disregard of standards of behavior which the employer has the right to expect of employees;

 or

2. *Carelessness or negligence of such degree of recurrence* as to:

 A. Manifest equal culpability, wrongful intent or evil design, or

 B. Show an intentional and substantial disregard of:

 1. The employer's interest, or

 2. The employee's duties and obligations to the employer.

370 Iowa Administrative Code § 4.32(1)(emphasis added).

Misconduct which does not rise to the level of culpability sufficient to be deemed misconduct may be due to:

1. Insufficiency

2. Unsatisfactory conduct

3. Failure in good performance as a result of:

 a. Inability

 b. Incapability

 c. Inadvertencies

 d. *Ordinary negligence in isolated incidences*

 e. *Good faith errors in judgment or discretion.*

*Id.* (emphasis added).

■ The administrative code makes it clear, therefore, that acts of carelessness or negligence must be sufficiently recurrent and not merely isolated to rise to the level of culpable or intentional misconduct. *See Infante v. Iowa Department of Job Service*, 364 N.W.2d 262, 265 (Iowa App. 1984). The administrative code does provide, however, that past acts and warnings can be used to determine the magnitude of a current act of misconduct. 370 Iowa Administrative Code § 4.32(8)(1985).

In *Flesher v. Iowa Department of Job Service*, 372 N.W.2d 230, 232 (Iowa 1985), the court affirmed the agency's finding of misconduct where the petitioner had been given three warnings for failure to complete a cash audit form and "skim log" when taking excess cash receipts and putting them in the safe during the working day. The court held that while the administrative code definition of misconduct did not specifically address violations of security procedures, under certain circumstances, such violations without dishonesty may be deemed misconduct:

Security procedures and rules are important to the employer. *Repeated violations of a security rule,* depending upon the effect on the employer and the employer reaction to a knowing violation, *may indicate that employee actions are more than ordinary negligence and, rather, represent a substantial disregard of the employer's interest.*

\* \* \* \* \* \*

Employer disregard of [security] rule is a serious concern of the employer. When the employer does not condone past violations of the rule, repeated violations may show an intentional and substantial disregard of the employer's interest within the rule 4.32(1)(a) definition of misconduct.

\* \* \* \* \* \*

Claimant knew, or should have known, that another violation of the security procedures would not be tolerated.

*Flesher*, 372 N.W.2d at 234 (citing with approval *Elias v. Commonwealth Unemployment Compensation Board of Review*, 15 Pa.Commw. 263, 266, 325 A.2d 351, 352 (1974)) (employee disqualified from benefits for repeated failure to follow employer rules in regard to handling money after warning, such conduct showing willful disregard of employer's welfare); *Lundy's Market, Inc. v. Florida Department of Commerce, Division of Employment Security*, 373 So.2d 433, 434 (Fla.App. 1979)(repeated failure to comply with employer's instruction prohibiting leaving cash drawer open and leaving change on the counter was misconduct)).

In *Eaton*, a telephone operator was fired, after two warnings, for failure to properly disconnect telephone calls. *Eaton*, 376 N.W.2d at 916. The court held that her failure to follow switchboard rules on two occasions was not sufficient to be considered recurring carelessness to such a degree as to constitute disregard of her employer's interest. *Id.*, at 918.

 The instant case is analogous to *Flesher* and *Eaton*. The agency's findings of fact indicate Henry was discharged based on the single incident of failing to put away the bank bag. The agency held that even though this was an isolated incident, Henry's carelessness was of sufficient culpability to support a finding of misconduct:

> We are only concerned with whether or not claimant's conduct and failure to follow a direct order given to her by the employer was a willful and wanton disregard of the employer's interest and of her duties and obligations owed to the employer and whether or not she was careless to such a degree or extent as to establish wrongful intent or evil design. *While ordinarily one case of carelessness does not amount to much, when carelessness is of such magnitude or is repeated on various occasions, the claimant cannot escape a disqualifica-*

*tion from benefits for such acts.* (emphasis added)

The hearing officer misstated the definition of misconduct in his conclusions of law. The definition of misconduct under the administrative code is clear and unambiguous. 370 Iowa Administrative Code § 4.32(1). Therefore, an employee's carelessness or negligence rises to the level of misconduct evincing wanton and willful disregard of the employer's interest only if there are recurrent incidences of carelessness to a sufficient degree. To disqualify an employee from benefits the misconduct must be more serious than action merely warranting discharge from employment. To be disqualified from benefits for a single incident, however, the misconduct must be a deliberate violation or disregard of standards of behavior which the employer has the right to expect of employees.

 In the instant case the salon manager admitted this had been the first time cash receipts had not been put away. There is no dispute Henry was fired solely for that reason. Henry did know about employer expectations through staff meetings. However, she had never been singled out for disciplinary action regarding the cash receipts prior to the incident in question. According to the hearing officer's finding of facts, Henry had not received any previous formal warnings regarding cash receipts or other behavior in general. Although Henry's actions may have warranted discharge from employment, her single incident of careless behavior was not of sufficient degree to disqualify her from benefits. As such, as a matter of law Henry was improperly disqualified from benefits based on this first, isolated act of carelessness.

 The hearing officer tried to bring his decision within the administrative code definition by finding Henry failed to put away the money after "repeated advice and counseling" by the employer. However, carelessness amounting to misconduct occurs when an employee commits repeated instances of ordinary carelessness and not

when the employee commits a single careless act after repeated instructions.

■ Even accepting the hearing officer's interpretation of the misconduct definition, there was not substantial evidence in the record to show Henry's carelessness in failing to put away the money was sufficient to manifest wrongful intent or evil design. Failure to perform a specific task does not constitute misconduct if such failure is in good faith or for good cause. *Woods v. Iowa Department of Job Service,* 327 N.W.2d 768, 771 (Iowa App.1982). Good faith errors of judgment or discretion are not deemed to be misconduct within the meaning of § 96.5(2). 370 Iowa Administrative Code § 4.32(1) (1985). Such failure may be grounds for discharge but not for penalty. *Budding,* 337 N.W.2d at 222.

Henry asserts her failure to put away the cash receipts was a good faith error in judgment. There was no dispute that February 4, 1984, was the first day the new cash receipts procedure went into effect. Henry testified she had never before worked at the salon on Saturday and was not familiar with the receptionist's Saturday time schedule, which was different from her weekday schedule. In addition, Henry testified she asked another employee to put away the cash receipts when she left the salon because Henry was concerned about the manager's instruction that no one was to remain in the salon after hours or they would be discharged. Henry believed this instruction meant she would be discharged if she was in the salon after *her* working hours. At the hearing the manager testified the rule meant after the *salon's* business hours and after all the hair designers were gone. The manager did admit there was no written personnel policy or manual which would have clarified the rule. As such, there is no evidence that Henry's actions were motivated by anything other than a good faith misunderstanding of this rule and did not amount to deliberate disregard.

On the day in question Henry was scheduled to complete her shift and put away the cash receipts. However, another employee still had customers. Trying to balance the conflicting cash receipts procedure and after hours rule, Henry put the bulk of the cash receipts in the lock bag and asked the other employee to add the balance of the receipts to the bag when she finished and put it away. This was not done. The manager later testified Henry should have telephoned the manager to clear up her confusion and at least should have put away the bulk of the cash receipts before leaving. The manager is correct, but those allegations alone are not enough to infer wrongful intent, evil design or wanton disregard. The fact that Henry attempted to make arrangements for putting away the cash receipts is evidence she did not wantonly and willfully disregard the employer's interest in safeguarding the receipts.

In addition, there was no evidence presented of any statements or actions by Henry which demonstrated deliberate disregard or wrongful intent on her part. Henry testified she was consciously trying to follow, not disregard, her employer's allegedly conflicting rules when she asked the other employee to put away the cash receipts. Henry's resolution of the dilemma turned out to be an error, but it is not sufficient to negate her good intentions. Therefore, there was not substantial evidence in the record showing Henry's failure to put away the cash receipts was the result of carelessness as amounted to wrongful intent or wanton disregard.

Accordingly, the employer failed to show Henry's actions resulting in her discharge amounted to misconduct as contemplated in Iowa Code § 96.5(2). The district court erred in holding that there was substantial evidence to support the agency's finding and erred as a matter of law in holding that one isolated incident of carelessness was sufficient to find Henry committed misconduct. Therefore, Henry is entitled to unemployment benefits.

**REVERSED.**