**John F. GREENE, Petitioner–Appellant,**

**v.**

**EMPLOYMENT APPEAL BOARD, Department of Employment Services, and Dobb's House, Inc., Respondents–Appellees.**

**No. 87–938.**

Court of Appeals of Iowa.

May 31, 1988.

Timothy S. Thimesch, Student Intern, and Carolyn F. Coleman, Legal Aid Society of Polk County, Des Moines, for petitioner-appellant.

Blair H. Dewey and William C. Whitten, Employment Appeal Bd., Des Moines, for respondents-appellees.

Heard by OXBERGER, C.J., and DONIELSON and HAYDEN, JJ.

HAYDEN, Judge.

Claimant, John F. Greene, appeals the ruling of the district court upholding the decision of the Department of Employment Services and the Employment Appeal Board to deny him unemployment benefits. He asserts the agency erred by determining he committed misconduct. He also asserts his act which allegedly constituted misconduct was not a "current act." We affirm.

Our scope of review is for the correction of errors of law. Iowa Code § 17A.20; *Boyd v. Iowa Dept. of Job Service,* 377 N.W.2d 1, 2 (Iowa App.1985). We review the decision of the district court and determine whether the court applied the law correctly. *Endicott v. Iowa Dept. of Job Service,* 367 N.W.2d 300, 302 (Iowa App. 1985). The fact findings of the agency have the force of a jury verdict and will not be overturned on appeal if supported by substantial evidence in the record made before the agency when that record is viewed as a whole. *See Bahr v. Christianson,* 282 N.W.2d 768, 769 (Iowa App.1979).

We find substantial evidence for the following findings of fact. Greene was employed as an assistant manager at Dobb's House Restaurant, located at the Des Moines Municipal Airport. On May 30, 1986, Greene went to the office of the Director of Aviation Operations to investigate a sudden drop in water pressure at the restaurant. This drop in pressure was potentially harmful to some of the restaurant's equipment. Later that day, the Director's office registered with Ed Rasys, general manager of the restaurant, the complaint Greene had been offensive and belligerent. On June 3, 1986, Rasys spoke with Greene regarding his conduct and gave him a written warning. This warning notified Greene his conduct in this and previous instances was grounds for dismissal. It also informed him he and Rasys would meet on June 10th to discuss the action the restaurant determined was necessary re-

garding Greene's employment. On June 10, 1986, when the restaurant's other assistant manager returned from vacation, Greene was discharged.

The previous instances of conduct mentioned above referred to communication problems Greene had experienced with other employees and for which he had received warnings. In February 1986 Greene had notified an employee through another employee that the number of his shifts were being reduced. The restaurant policy was that the affected employee be informed personally by Greene. The second incident also occurred in February 1986. Greene had repeatedly told a busboy to go clear tables in the public area, despite the employee's attempts to inform him the fly in his pants was torn. Ultimately the busboy found an apron to wear and then began clearing the tables. At that point, Greene demanded he remove the apron and again was inattentive to the employee's explanation. The third incident occurred in March 1986. Greene had made a change in the employees' work schedule which resulted in overtime being given to the wrong employee. When the employee who should have been given the overtime attempted to discuss the matter with him, Greene reacted in an imperious manner and refused to explain to her why the particular schedule change had been made. The employee, feeling mistreated, then gave the restaurant a two-week notice of her resignation. Greene's action in this instance was again contrary to the restaurant's policy.

After he was discharged, Greene filed a claim for unemployment benefits. A claims deputy found Greene had not engaged in misconduct and awarded him benefits. A hearing officer reversed that decision, finding although Greene was not intentionally rude to his subordinates or to customers and other people, he engaged in misconduct because he had been repeatedly warned about this behavior. The Employment Appeal Board agreed with the decision of the hearing officer. Greene sought judicial review of the Board's decision. The district court found there was substantial evidence in the record to support the agency's decision and the Board did not err in finding Greene was discharged for misconduct. This appeal followed.

■ I. *Misconduct.* An employee discharged for misconduct may be held ineligible for unemployment compensation benefits under the rules of the agency which provide:

> Misconduct is defined as a deliberate act or omission by a worker which constitutes a material breach of the duties and obligations arising out of such worker's contract of employment. Misconduct as the term is used in the disqualification provision as being limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of employees, or in *carelessness or negligence of such degree of recurrence as to manifest equal culpability, wrongful intent or evil design,* or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to the employer. On the other hand mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, inadvertencies or ordinary negligence in isolated instances, or good faith errors in judgment or discretion are not to be deemed misconduct within the meaning of the statute.

Iowa Admin.Code § 345–4.32(1)(a) (emphasis added). This definition accurately reflects the intent of the legislature. *Flesher v. Iowa Dept. of Job Service,* 372 N.W.2d 230, 234 (Iowa 1985). Carelessness amounting to misconduct occurs when an employee commits repeated instances of ordinary carelessness and not when the employee commits a single careless act after repeated instructions. *Henry v. Iowa Dept. of Job Service,* 391 N.W.2d 731, 736–37 (Iowa App.1986); *see also Flesher,* 372 N.W.2d at 234 (repeated violations of a security rule may represent a substantial disregard of the employer's interest and more than merely ordinary negligence); *Harlan v. Iowa Dept. of Job Service,* 350 N.W.2d 192, 194 (Iowa 1984) (habitual tar-

diness may constitute inexcusable misconduct).

The initial issue in this case is whether the incident on May 30, 1986, in the office of the Director of Aviation Operations and the previous incidents in February and March of 1986 constituted repeated instances of ordinary carelessness and thereby justify the determination of misconduct. We conclude they do.

All of these incidents involved a failure by Greene to communicate effectively with others as a result of his being inattentive to their concerns or reacting inappropriately to those concerns as though they were attempts to undermine his authority. Greene had been repeatedly warned about this aspect of his personality and conduct. Despite these warnings, Greene continued to interact with Dobb's employees and others in a manner he had been informed was inconsistent with the restaurant's interests. We conclude the repetition of this unintentionally careless demeanor constituted misconduct.

II. *Past or Current Act.* A finding of misconduct must be based upon a current act for unemployment benefits to be denied, however. *Myers v. Iowa Dept. of Job Service,* 373 N.W.2d 507, 510 (Iowa App.1985). Greene asserts the act for which he was discharged was a past act due to the delay between the occurrence of the act and his discharge. As noted above, the act occurred on May 30, 1986, and Greene was discharged on June 10th. On June 3rd, however, Greene was informed his conduct provided grounds for dismissal and that a meeting would be held on June 10th to discuss the action deemed necessary by the restaurant. As Greene had this notice on June 3rd, we conclude that date and not June 10th is the proper one for determining whether Greene's act on May 30th was past or current.

We are persuaded Greene's action on May 30th did not become a past act because of the few days which elapsed between its occurrence and Greene's receipt of the written warning on June 3rd. We therefore conclude Greene was discharged for a current act of misconduct.

AFFIRMED.