**IOWA EROSION CONTROL, INC.
and Liberty Mutual Insurance
Co., Appellants,**

v.

**Victoria Carreon SANCHEZ, Appellee.**

No. 98–83.

Supreme Court of Iowa.

Sept. 9, 1999.

Joseph S. Cortese II of Huber, Book, Cortese, Happe & Brown, P.L.C., Des Moines, for appellants.

Bruce H. Stoltze of Brick, Gentry, Bowers, Swartz, Stoltze, Schuling & Levis, P.C., Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, NEUMAN, SNELL, and CADY, JJ.

NEUMAN, Justice.

Victoria Carreon Sanchez sought workers' compensation survivor's benefits after her thirty-year-old son, Juan Sanchez, was killed in the course of his employment with Iowa Erosion Control, Inc. The employer[1] resisted payment on the ground Mrs. Sanchez was neither wholly dependent on her son at the time of his death nor "incapacitated from earning" as that phrase is used in Iowa Code section 85.44 (1995). The industrial commissioner rejected the employer's argument, and its decision to award benefits was subsequently affirmed on judicial review by the district court. Finding no error, we affirm on appeal.

The facts are largely undisputed. Victoria Sanchez is a woman in her mid-fifties who was born and raised in Mexico. She lived there until 1988 when she joined her son, Juan, in California. Victoria speaks no English and neither reads nor writes Spanish. She has only a second grade education. She has never worked outside the home. Since coming to the United States she has been totally dependent on her son for all the necessities of life.

Victoria's immigration status was the subject of much speculation at trial. It appears she entered the country legally and has applied, as a sibling of an American citizen, for permanent residency status. Her application, however, has been pending without action by immigration officials for roughly a decade. In the meantime, she has been unable to secure a work permit.

Victoria and Juan moved to Toledo, Iowa, in 1990. Juan was employed by Iowa Erosion Control, Inc. He was unmarried and without children when, in 1994, he died as a result of a work-related accident. Victoria applied for survivor's benefits under Iowa Code section 85.31. In addition to authorizing payments for a surviving spouse and minor children, the statute pro-

1. The employer's insurance carrier, Liberty Mutual Insurance Co., joined in the resistance and appears as an appellant in these proceedings. For the sake of simplicity, however, this opinion is written as though Iowa Erosion Control, Inc., is the only appellant.

vides that when death results from a work-related injury,

> the employer shall pay the dependents who were wholly dependent on the earnings of the employee for support at the time of the injury, during their lifetime, compensation upon the basis of eighty percent per week of the employee's average weekly spendable earnings, commencing from the date of death as follows:
>
> . . . .
>
> d. To all other dependents as defined in section 85.44 for the duration of the incapacity from earning.

Iowa Code § 85.31(1). A "dependent" is defined in section 85.44 as

> one actually dependent or mentally or physically incapacitated from earning. Such status shall be determined in accordance with the facts as of the date of the injury. . . .

Iowa Erosion Control generally denied Victoria's claim for death benefits. It contested her alleged dependence on Juan for support, and argued that even if dependency could be shown, she could prove no mental or physical incapacity to support herself. The industrial commissioner, affirmed on judicial review by the district court, concluded the question of earning capacity involves the duration of eligibility for benefits, not the threshold entitlement to claim them. Because the facts supported a finding of actual dependency as well as ongoing incapacity to earn, it ruled Victoria was entitled to benefits under the statute. This appeal by Iowa Erosion Control followed.

## I. Scope of Review.

■ Our review is at law, not de novo. *Mortimer v. Fruehauf Corp.*, 502 N.W.2d 12, 14 (Iowa 1993). Appellant's challenge to the decision of the industrial commissioner, and the district court, rests principally on a difference of opinion over the interpretation of controlling workers' compensation statutes. As with all such challenges, "we defer to the expertise of the agency but reserve for this court the final interpretation and construction of pertinent statutes." *Second Injury Fund v. Braden*, 459 N.W.2d 467, 468 (Iowa 1990). Where facts are disputed, "the question is not whether the evidence might support a different finding but whether the evidence supports the findings actually made." *Id.* (quoting *Henry v. Iowa Dep't of Job Serv.*, 391 N.W.2d 731, 734 (Iowa App.1986)).

## II. Issue on Appeal.

■ Iowa Erosion Control contends on appeal that the district court, as well as the industrial commissioner, misinterpreted the proof requirements of Iowa Code section 85.31(1)(d). The company claims the statute, when read in harmony with the definition of "dependent" found in section 85.44, requires proof that the claimant is both wholly dependent *and* mentally or physically incapable of earning a living before death benefits become payable. Having set up this two-part test, the company then argues that even if the record supported a finding that Victoria Sanchez was wholly dependent on her son before his death, the record also establishes she is an able-bodied person who is neither mentally nor physically incapable of supporting herself. It therefore claims the court erred as a matter of law in awarding her benefits.

■ At the outset we note that the factual record made before the industrial commissioner dispels any notion that Victoria was other than entirely dependent on her son for support. That a parent may be dependent on a child, and entitled to workers' compensation benefits following a work-related death, has long been the law in Iowa. *See Murphy v. Franklin County*, 259 Iowa 703, 709, 145 N.W.2d 465, 469 (1966). Numerous witnesses testified to Juan's devotion to his mother and her total reliance on him for food, clothing, shelter and transportation. When cross-examined about the lack of documentary support for these observations, one of these witnesses

replied: "How do you think a son is going to write a paper to say I support my mother? It is your mother. You have to support your mother." Others testified similarly. The company simply furnished no evidence to counter the claimant's proof.

■ That brings us to the appellant's disagreement with the district court's interpretation and application of the governing statutes. We first address the company's claim that section 85.44 requires proof that the survivor is both wholly dependent *and* mentally or physically incapacitated from earning. Contrary to the company's assertion, the legislature's use of the word "or" in section 85.44 signals two distinct classes of eligible claimants: those who are "actually dependent" and those who are "mentally or physically incapacitated from earning." *See Kelly v. Sinclair Oil Corp.*, 476 N.W.2d 341, 346 (Iowa 1991) ("or" used in a statute is presumed disjunctive unless contrary intent appears); 1A Norman J. Singer, *Sutherland Statutory Construction* § 21.14, at 129 (5th ed.1993) (same). Eligibility status is determined as of the employee's date of death. Iowa Code § 85.44. A plain reading of section 85.44 thus defeats the company's argument that a person claiming survivor's benefits must, as a threshold matter, meet both criteria. The district court was correct in so ruling.

■ That is not to say "incapacity from earning" does not play an important part in this statutory scheme. But, like the district court, we believe the phrase— considered in context—relates to the *duration* of benefits, not the recipient's initial entitlement. Section 85.31 sets forth the durational limitations for work-related death benefits. Some of the classifications—but not all of them—limit recovery based on earning capacity. A surviving spouse, for example, is entitled to benefits "for life or until remarriage" irrespective of earning capacity. Iowa Code § 85.31(1)(a). A surviving child, on the other hand, may receive benefits to age twenty-five "if actual-

ly dependent." *Id.* § 85.31(1)(b). By contrast, benefits payable to a child "who was physically or mentally incapacitated from earning at the time of the injury causing death" are limited to "the duration of the incapacity from earning." *Id.* § 85.31(1)(c). Importantly, this same durational limit is placed on the benefit eligibility of persons, like Victoria Sanchez, who fall into the "other dependents" category. *See id.* § 85.31(1)(d).

■ Iowa Erosion Control claims the words "incapacity from earning" used in section 85.31(1)(d) with respect to durational limits must be synonymous with the mental or physical incapacity by which benefit recipients are defined in section 85.44. We disagree. It can be seen from a review of section 85.31 that, aside from the spousal category, this statutory scheme uniformly classifies beneficiaries based on actual dependency *or* mental or physical incapacity, but not both. Thus it is logical to assume the legislature intended a different meaning for "incapacity from earning" when applied to a healthy but dependent person than when applied to one already classified as mentally or physically incapacitated from earning. *See Mortimer*, 502 N.W.2d at 14 (workers' compensation statutes must be interpreted with reason and logic to effectuate legislative intent).

■ The district court recognized the reasonableness of this legislative distinction here. Victoria Sanchez easily fit the "actually dependent" category upon Juan's death, but could not be fairly described— then or now—as mentally or physically incapacitated from working. Yet the record reveals many other obstacles—cognitive, governmental, and cultural—which have substantially impaired her capacity to earn. It is upon these incapacities that the industrial commissioner and district court relied to justify continuing benefits. Based on the record before us we see no error in this judgment.

It is undisputed that Victoria is illiterate in Spanish as well as English. This was demonstrated by her difficulty, even with the aid of an interpreter, in spelling her name for the court reporter. She has never been employed outside her home. This may be traced to lack of education and training but also reflects a strong cultural bias against "working women" prevalent in her native country. Moreover it appears from the record that, despite years of effort, Victoria has been unable to secure a resident status from the Immigration and Naturalization Service that would authorize her to secure a work permit.

Iowa Erosion Control argues strenuously that the above-described impediments are largely of Victoria's own making and should not detract from her "moral obligation" to support herself. It contends she should look to her eighty-year-old estranged husband in Mexico for support. Or, like many other undocumented aliens, she should secure whatever employment she can, heedless of the legalities.

■ We are convinced the company's position on this point is not well taken. It must be remembered that Juan Sanchez was killed on the job, leaving a dependent parent utterly without support. The dependent, Victoria Sanchez, is an Iowa resident. The employer has furnished no authority to support its view that, on grounds of policy or morality, her immigration status has any bearing on her entitlement to benefits. The prevailing view is to the contrary. *See Serrano v. Cudahy Packing Co.,* 194 Iowa 689, 690, 190 N.W. 132, 132–33 (1922) (noting alien status immaterial to question of whether parent proved dependence on deceased son); Iowa Code § 85.31(5) (compensation payable to a dependent who is an alien *not residing* in the United States at time of injury reduced by one-half with remainder payable to second injury fund); *see also Mendoza v. Monmouth Recycling Corp.,* 288 N.J.Super. 240, 672 A.2d 221, 225 (App.Div.1996) (in absence of express statutory bar, even illegal aliens accorded benefit of worker's compensation laws, especially for redress of personal injury claims); *Artiga v. M.A. Patout and Son,* 671 So.2d 1138, 1139 (La. Ct.App.1996) (same); *see generally* 5 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 63.51, at 11–184 (1999) ("The distinction between alien and citizen is of no relevance to compensation law as long as both are residents.").

The fact that Victoria receives no support from her elderly and estranged husband—a circumstance predating the accident by nearly a decade—is similarly unavailing. *See* 5 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 63.00, at 11–109 (1999) (proof of actual dependency sufficient for recovery despite unconventional domestic arrangements). And, finally, we are unwilling to accept as a matter of policy or judicial notice appellant's bald assertion that employers regularly hire undocumented aliens and, therefore, Victoria has no excuse for not working. Federal law makes the intentional hiring of unauthorized aliens illegal. 8 U.S.C. § 1324a(a); *Dowling v. Slotnik,* 244 Conn. 781, 712 A.2d 396, 402 (1998); *see Manis Constr. Co. v. Arellano,* 13 Va.Ct.App. 292, 411 S.E.2d 233, 235 (1991) (illegal alien could not be lawfully employed and legally work in this country absent change in immigration status). Especially pertinent to this controversy, Congress' evident purpose in enacting the Immigration Reform and Control Act of 1986 was not to preempt state laws benefitting undocumented aliens, but to reduce the financial incentive for unscrupulous employers to hire undocumented workers. *Dowling,* 712 A.2d at 410–11; *Mendoza,* 672 A.2d at 225.

### III. Summary.

We believe the industrial commissioner and district court correctly concluded that survivorship benefit eligibility under Iowa Code section 85.31(1)(d) requires proof of actual dependency *or* mental or physical

incapacity from earning, but not both. We also hold that the phrase "incapacity from earning" found in section 85.31(1)(d) describes a durational limit on benefits that is broader than the term "mentally or physically incapacitated from earning" in section 85.44 and may include the types of impediments to earning capacity found by the industrial commissioner here. Finally, we conclude the record furnishes substantial support for the finding that Victoria Sanchez's incapacity to earn was ongoing at the time of trial, thereby justifying the industrial commissioner's award of survivor's benefits under Iowa Code section 85.31(1)(d). Accordingly, we affirm the judgment of the district court.

**AFFIRMED.**