**STONE CONTAINER CORP. and National Union Fire Insurance Company, Appellants,**

v.

**Walker H. CASTLE, Appellee.**

**No. 01–1291.**

Supreme Court of Iowa.

Feb. 26, 2003.

Thomas M. Plaza and Judith Ann Higgs of Heidman, Redmond, Fredregill, Patterson, Plaza, Dykstra & Prahl, L.L.P., Sioux City, for appellants.

Harold K. Widdison, Sioux City, for appellee.

TERNUS, Justice.

The issue presented in this case is whether the industrial commissioner correctly required an injured worker's employer to pay for a laptop computer pursuant to the employer's obligation to "furnish reasonable and necessary ... appliances" under Iowa Code section 85.27 (1999). The district court affirmed the commissioner's award, but the court of appeals, in a split decision, reversed. In view of the unique circumstances presented by the case before us, we think the commissioner was right. Accordingly, we vacate the court of appeals decision and affirm the district court judgment.

## I. *Record on Appeal.*

■ Before we review the propriety of the agency's decision, we consider the employer's objection to certain factual assertions made by the employee on appeal. Although the employer does not dispute the accuracy of the facts upon which the employee relies, it argues there is no support in the record for these facts because the deputy industrial commissioner who heard the evidence inadvertently failed to tape record the full hearing. As a result, there is only a partial transcript of the testimony presented to the agency.

Iowa's Administrative Procedure Act governs the record on judicial review:

> Within thirty days after filing of the petition [for judicial review,] or within further time allowed by the court, the agency shall transmit to the reviewing court the original or a certified copy of the entire record of any contested case which may be the subject of the petition. By stipulation of all parties to the review proceedings, the record of such a case may be shortened.... The court may require or permit subsequent corrections or additions to the record.

Iowa Code § 17A.19(6). The district court file does not reveal any stipulation by the parties to shorten the record, nor does it show that either party requested any corrections or additions to the record. More importantly, the accuracy of the facts relied upon by the employee was never contested by the employer in the district court; the employer simply made the legal argument that a computer was not an "appliance" within the meaning of section 85.27 under the facts of this case. It is perhaps for this reason that the district court did not require any additions to the record, despite having only a partial transcript of the testimony.

Under these circumstances, we will not entertain the employer's belated argument on appeal that the employee lacks record support for his factual assertions. If the employer was dissatisfied with the record on judicial review, this matter should have been raised and resolved in the district court.

## II. *Background Facts and Proceedings.*

The appellee, Walker Castle, suffered catastrophic injuries in an industrial accident while working for the appellant, Stone Container Corporation. Castle, who was nineteen years old at the time, lost both his legs at the hip joint, as well as his buttocks, rectum and a testicle. He has undergone numerous surgeries, including skin grafts and colon resections. Castle suffers from chronic phantom limb pain, a "painful sensation of the presence of a limb that has been amputated." *Webster's Medical Desk Dictionary* 536 (1986).

In addition, Castle is very sensitive to temperature due to his extensive skin grafts and scaring. Normal room temperature causes his skin to break down. As a result, he is forced to spend most of his time in seclusion in his room at Opportuni-

ties Unlimited[1] where the temperature can be kept cooler. Moreover, he is often unable to use his wheelchair because his skin problems prevent him from sitting. Therefore, he uses a "prone cart" that permits him to lie on his stomach and chest.

Castle also suffers from post-traumatic stress disorder and other psychological injuries as a result of the accident. He has lived in a medically supervised environment from the time he was injured in April 1997.

Prior to the accident, Castle had no education or training beyond high school. He did not own a computer. At his request, however, Stone Container's worker's compensation carrier, appellant, National Union Fire Insurance Company, provided Castle with a laptop computer in October 1997. (In the remainder of this opinion, we will refer to the insurer and the employer jointly as the employer.) Following that acquisition, Castle completed ten hours of college course work.

Eventually Castle's computer ceased to work and could not be repaired, prompting him to file an application for alternate medical care pursuant to Iowa Code section 85.27, on August 30, 2000. Castle requested the employer be required to provide him with a laptop computer, including adaptations that would facilitate his use of it in his wheelchair and the prone cart.

At the hearing on Castle's application, his attorney asserted Castle needed a computer to assist him "in his educational pursuits, rehabilitation pursuits, and the computer ... would serve ... to replace

function that he has lost ... due to his injuries." Castle called two employees of Opportunities Unlimited who supported his claim: a computer teacher who was certified by Microsoft, and a licensed occupational therapist. The employer argued in response that a computer did not qualify as medical care under section 85.27 and therefore the employer had no obligation to provide Castle with one.

The deputy industrial commissioner, who had been delegated the authority to issue a final agency decision on Castle's request, concluded the computer and adaptive devices were appropriate expenses under section 85.27. Relying on the common meaning of the statutory terms as well as an administrative rule defining "appliance," *see* Iowa Admin. Code r. 876—8.5, the deputy stated that "[t]he computer is, in this case[,] an appliance because of the rehabilitative and therapeutic use it provides in an occupational therapy setting to increase [Castle's] vocational and personal independence, which were lost as a result of his injuries."

As previously noted, this ruling was affirmed by the district court on judicial review, but was reversed by the court of appeals. We granted Castle's application for further review.

### III. Scope of Review.

 Our review of the agency decision is for correction of errors of law, *Noble v. Lamoni Prods.*, 512 N.W.2d 290, 292 (Iowa 1994), and is governed by Iowa's Administrative Procedure Act, Iowa Code chapter 17A, *see* Iowa Code § 86.26.[2] In

---

**1.** Opportunities Unlimited is a nonprofit group residential facility that provides rehabilitation and nursing care for persons who have suffered traumatic injuries.

**2.** In the briefs originally filed by the parties on appeal, they disagreed on whether appel-

late review was subject to the 1998 amendments to chapter 17A. *See* 1998 Iowa Acts ch. 1202, § 24 (codified at Iowa Code § 17A.19(8)-(12) (Supp.1999)). Although the court of appeals rejected Castle's argument that the amendments did not apply, Castle

addition to the standards of review set out in section 17A.19(10), our review is guided by three other principles of law. First, administrative rules have "the force and effect of law as long as they are 'reasonable and consistent with legislative enactments.'" *Greenwood Manor v. Iowa Dep't of Pub. Health*, 641 N.W.2d 823, 835 (Iowa 2002) (citation omitted). In addition, we must "give appropriate deference to the view of the agency with respect to matters that have been vested by a provision of law in the discretion of the agency." Iowa Code § 17A.11(1)(*c*). Finally, we interpret the worker's compensation statute liberally, keeping in mind that the law was enacted "for the benefit of the working person." *Mortimer v. Fruehauf Corp.*, 502 N.W.2d 12, 14 (Iowa 1993); *accord IBP, Inc. v. Harker*, 633 N.W.2d 322, 325 (Iowa 2001).

Although the employer relies on several legal grounds for reversal, *see* Iowa Code § 17A.19(10)(*b*), (*f*), (*l*)-(*n*), these grounds all rest on the basic argument that the deputy was wrong in concluding that an employer could be obligated to provide its injured employee with a computer under section 85.27. Therefore, we will address the employer's specific contentions within our discussion of this larger issue. We first consider a preliminary contention of the employer that the agency failed to notify the parties that it would take official notice of certain "facts" in making its decision as required by Iowa Code section 17A.14(4).

### IV. *Official Notice Under Section 17A.14(4).*

▇ The employer argues that the deputy industrial commissioner improperly used a medical dictionary as a resource to determine the meaning of terms used in section 85.27 and the implementing administrative rule. The employer claims the deputy was required to give the parties advance notice of his intent to consult this source pursuant to Iowa Code section 17A.14(4). This statute states in pertinent part:

Official notice may be taken of all facts *of which judicial notice may be taken* and of other facts within the specialized knowledge of the agency. Parties shall be notified at the earliest practicable time, either before or during the hearing, or by reference in preliminary reports, preliminary decisions or otherwise, of the facts proposed to be noticed and their source, ... and the parties shall be afforded an opportunity to contest such facts before the decision is announced unless the agency determines as part of the record or decision that fairness to the parties does not require an opportunity to contest such facts.

Iowa Code § 17A.14(4) (emphasis added).

▇ The employer's attempt to apply this statute to the use of a dictionary, medical or otherwise, as a guide to interpretation of legislative enactments is misguided. A dictionary is simply one source of meaning upon which agencies and courts routinely and properly rely in interpreting statutory terms. *E.g., Harker*, 633 N.W.2d at 326 (citing general dictionary to define term used in worker's compensation statute); *Ciha*, 552 N.W.2d at 155 (using legal dictionary to interpret industrial commissioner's rule defining "appliance"). *See generally State v. Westeen*, 591 N.W.2d 203, 208 (Iowa 1999) (stating that dictionary provides a ready source for the

does not raise this issue in his application for further review and, in fact, relies on the amended statute to support his argument that the court of appeals should not have reversed the district court's ruling. Because the parties are apparently now in agreement that the amended statute governs this appeal, we apply the 1998 amendments.

common meaning of statutory terms). Judicial notice, on the other hand, "is a substitute for formal proof of a matter by evidence." 29 Am.Jur.2d *Evidence* § 24, at 79 (1994). The common meaning of statutory terms is not a matter upon which a party would offer formal proof and, consequently, is not a fact of which an agency must take official notice within the contemplation of section 17A.14(4). *Cf. Office of Consumer Advocate v. Utils. Bd.*, 452 N.W.2d 588, 596 (Iowa 1990) (applying section 17A.14(4) to board's "official notice of the equity rate used by the Missouri commission"). We see no basis for reversal on this point.

### V. Computer as an "Appliance."

A. *Applicable legal principles.* In pertinent part, Iowa Code section 85.27 provides:

> The employer, for all injuries compensable under this chapter or chapter 85A, *shall furnish reasonable* surgical, *medical,* dental, osteopathic, chiropractic, podiatric, physical rehabilitation, nursing, ambulance and hospital *services and supplies therefor* and shall allow reasonably necessary transportation expenses incurred for such services. The employer *shall also furnish reasonable and necessary* crutches, artificial members and *appliances* but shall not be required to furnish more than one set of permanent prosthetic devices.
>
> . . . .
>
> *For purposes of this section, the employer is obliged to furnish reasonable services and supplies to treat an injured employee,* and has the right to choose the care. . . . If the employee has reason to be dissatisfied with the care offered, the employee should communicate the basis of such dissatisfaction to the employer, in writing if requested, following which the employer and the employee

may agree to alternate care reasonably suited to treat the injury. If the employer and employee cannot agree on such alternate care, the commissioner may, upon application and reasonable proofs of the necessity therefor, allow and order other care. . . .

Iowa Code § 85.27 (emphasis added). Reduced to its essentials, section 85.27 requires an insurer to furnish reasonable medical services and supplies *and* reasonable and necessary appliances to treat an injured employee.

The scope of the latter obligation is partially explained in Iowa Administrative Code rule 876—8.5. That rule contains the following definition of the word "appliance" as used in section 85.27:

> Appliances are defined as hearing aids, corrective lenses, orthodontic devices, dentures, orthopedic braces, or *any other artificial device used to provide function or for therapeutic purposes.*
>
> Appliances which are for the correction of a condition resulting from an injury . . . are compensable under Iowa Code section 85.27.

Iowa Admin. Code r. 876—8.5 (emphasis added). Thus, under the agency's interpretation of section 85.27, an employer must provide any device that furnishes an action or affords a function impaired or lost as a result of the employee's injury, or that treats or remedies a condition resulting from the injury.

B. *Employer's arguments.* We turn now to the employer's contentions on appeal. The employer does not challenge the agency's rule defining "appliance." Rather, it claims a computer does not fall within this definition, or within section 85.27 generally. More specifically, the employer argues that section 85.27 obligates it to provide only (1) reasonable and necessary medical or surgical care, or (2) devices that improve function. A computer,

asserts the employer, is not medical care and does not supply function. The employer appears to take the position that because a computer would not restore *physical* mobility to Castle, it does not "provide function" lost by Castle as a result of his injuries. *See* Iowa Admin. Code r. 876—8.5.

C. *Analysis.* Because we think the peculiar facts of this case support the deputy's conclusion that a computer constitutes an appliance within the meaning of section 85.27, we confine our discussion to that issue. We begin our analysis with a brief review of two prior cases that have applied section 85.27 under unique, but somewhat similar, circumstances: *Manpower Temporary Services v. Sioson,* 529 N.W.2d 259 (Iowa 1995) and *Quaker Oats Co. v. Ciha,* 552 N.W.2d 143 (Iowa 1996).

In *Sioson,* work-related injuries rendered the employee, Sioson, a quadriplegic. 529 N.W.2d at 261. Due to her condition, Sioson was equipped with an electric "puff and sip" wheelchair. *Id.* When she traveled long distances, however, she had to use a manual wheelchair because her electric wheelchair was too large and heavy to be loaded in and transported by a passenger vehicle. *Id.* Because a manual wheelchair and the process of shifting her from one wheelchair to the other posed risks of injury and medical complications, Sioson requested that the employer provide her with a specially equipped van so she could use the electric wheelchair when she left her home. *Id.*

In affirming the commissioner's award of this expense to the employee, the key question addressed by this court was whether the modified van was an "appliance" within the meaning of section 85.27. *Id.* at 264. We concluded that under the "extremely rare" factual situation presented in *Sioson* it was:

We begin with the unusually strong medical evidence of necessity and of the record that [Sioson's] family status and past lifestyle reveal no other use of the van. That evidence refutes any contention that the van is a frill or luxury and reveals what can be described as an appliance, not greatly different from crutches or a wheelchair. The point is that a van is necessary in order to make [Sioson's] wheelchair fully useful.

... [W]e have agreed with the dictionary definition that describes the term "appliance" as "a means to an end." The "end" of the van is merely an extension of [Sioson's] 300–pound wheelchair. Without a van she is, more than need be, a prisoner of her severe paralysis. The commissioner could thus reasonably view the van as an appliance, a necessary part of [Sioson's] care.

*Id.* (citations omitted).

Our *Ciha* case also involved an employee who suffered from quadriplegia as a result of a work-related accident. 552 N.W.2d at 147. In that case, the employer refused to pay the expense of modifying a van so as to allow the employee, Ciha, to drive to work. *Id.* at 154. The commissioner allowed the expense, noting "[a]n appliance has been held to be a device that serves to replace a physical function lost by the injury." *Id.* (citing Iowa Admin.Code r. 343—8.5 (1996) (later renumbered as rule 876—8.5)). We affirmed, relying on our discussion in *Sioson* that an "appliance" is "a means to an end." *Id.* at 155. We concluded the van modifications were "merely an extension of Ciha's wheelchair," and therefore were properly allowed by the commissioner as an appliance, "a necessary part of Ciha's care." *Id.* at 156.

■ These cases stand, in part, for the principle that an expense falls within the scope of section 85.27 if it covers the cost of a device that replaces a function lost by

the employee as a result of the employee's work-related injury. We reject the employer's contention that an appliance must be necessary for *medical* care, which was one anticipated use of the van in *Sioson*—transportation of Sioson to doctor appointments. The determinative circumstance in *Sioson* and *Ciha* was the fact that the van and van modifications provided physical mobility lost by the employees due to their quadriplegia. We think a similar circumstance exists under the unique facts before us.

Castle, even more so than Sioson and Ciha, is a prisoner of his injuries. Like them, he has lost the ability to physically move about without the assistance of a mechanical device. But unlike them, a van cannot replace this lost function for long-distance movement because, for now, Castle must remain in the controlled environment of his room to avoid additional medical complications. A computer in this case is comparable to the van in *Sioson* and *Ciha:* it provides Castle with access to the outside world—access that has been denied to him by his devastating injuries, and access that can only be gained through this artificial device.

Granted, a computer does not provide *physical* mobility; but we do not think such precise substitution is required under the liberal interpretation we are required to give to our worker's compensation statute. As we implied in *Sioson* and *Ciha,* it is the end function that is important; an appliance, whatever its form, is simply a means to get there. Here, the end function is the ability to interact with the outside world, not simply physical mobility. Viewed in this manner, a computer is a viable and necessary means to this end.

In summary, we conclude the agency properly interpreted section 85.27 in ruling a computer is an appliance for which Castle's employer is responsible. This conclusion makes it unnecessary to consider Castle's alternative contention that the computer is an appliance because it is an "artificial device used ... for therapeutic purposes" within the meaning of rule 876—8.5.

■ Having rejected the employer's contention that the deputy commissioner erred in her interpretation of the governing law, we also disagree with the employer's assertion there is not substantial evidence to support the deputy's findings. The employer argues "the evidence in this case was of inferior quality" because "[n]o qualified medical provider expressed the opinion that Castle needed a computer." It does not take a "qualified medical provider" to make apparent the effect on Castle of his undeniable injuries. Nor is testimony from a "qualified medical provider" required to allow the deputy to conclude that a computer would replace, electronically, the function lost by Castle as a result of his injuries, the ability to physically move about in the world. We conclude, therefore, that the agency's decision does not lack the necessary factual support simply because Castle did not have medical testimony, in addition to that offered by his occupational therapist, to support his application.

Finding no error in the agency decision, we affirm the district court judgment reaching the same conclusion. We vacate the court of appeals' contrary decision.

**DECISION OF COURT OF APPEALS VACATED; DISTRICT COURT JUDGMENT AFFIRMED.**