# United States Court of Appeals

## For the Eighth Circuit

_____

No. 13-3732

_____

Modesto Paulino

*Plaintiff - Appellant*

v.

Chartis Claims, Inc., formerly doing business as AIG Claims Services, Inc.

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Southern District of Iowa - Davenport

_____

Submitted: September 11, 2014
Filed: December 19, 2014

_____

Before BYE, COLLOTON, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

Modesto Paulino sued Chartis Claims, Inc. ("Chartis") alleging bad-faith denial of insurance benefits. The district court[1] granted Chartis's motion for summary judgment. Paulino now appeals. We affirm.

---

[1] The Honorable James E. Gritzner, Chief Judge, United States District Court for the Southern District of Iowa.

I.

Paulino, while employed by C-Tec, Inc., suffered a spinal-cord injury in a work-related accident that left him permanently paraplegic. Chartis insured C-Tec, Inc. for workers' compensation claims and paid the costs of Paulino's medical treatment and rehabilitation services. Following months of medical treatment and intensive rehabilitation, Paulino moved into the Center for Comprehensive Services ("CCS") for post-acute rehabilitation and preparation for discharge to a permanent, independent living arrangement. In March 2006, after Paulino was capable of basic self-care, community access, and independent meal preparation, CCS set an anticipated discharge date of April 30, 2006. Paulino had an income of less than four hundred dollars per week from workers' compensation and was ineligible for state and federal assistance programs due to his status as an undocumented Mexican national. Because he was permanently paraplegic, Paulino required wheelchair-accessible housing equipped with an electric hospital bed, access to public transportation, and other accommodations.

Paulino's Chartis case manager was unable to locate suitable, affordable housing acceptable to Paulino. Though the discharge date passed, CCS refused to discharge Paulino to a temporary residence that was not adequately adapted to Paulino's needs. Chartis continued to pay for Paulino's medical bills and was prepared to pay for modifications to a permanent home; however, Chartis notified Paulino that it would not pay for his living expenses at CCS, which included his rent, utilities, groceries, and cable television, after April 30, 2006 because his stay was no longer medically necessary. On May 6, 2006, Chartis withdrew payment authorization for such expenses. Paulino nevertheless continued to reside at CCS.

Paulino filed a petition with the Iowa Workers' Compensation Commissioner seeking payment from Chartis for his living expenses under Iowa Code § 85.27. After an arbitration hearing, the Deputy Commissioner issued an arbitration decision

denying Paulino's claim. The Deputy Commissioner found that Paulino had failed to establish that the disputed costs were reasonable or compensable under Iowa law. Paulino appealed, and the Commissioner reversed, noting that the special circumstances of Paulino's case made his continued stay at CCS both appropriate and compensable. The Commissioner required Chartis to pay for Paulino's living expenses at CCS until suitable housing could be found. Chartis filed a petition for review in state court pursuant to Iowa Code § 17A.19. The court affirmed the Commissioner's decision.

On April 26, 2011, Paulino sued Chartis in Iowa state court alleging bad-faith denial of benefits as of May 6, 2006, seeking consequential and punitive damages. Chartis removed the matter to federal district court based on the diversity of the parties and moved for summary judgment. The district court granted summary judgment for Chartis. Paulino now appeals.

II.

"We review *de novo* the district court's grant of summary judgment, viewing the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party." *Petroski v. H & R Block Enters., LLC*, 750 F.3d 976, 978 (8th Cir. 2014). Summary judgment is proper if there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).

Under Iowa law, a *prima facie* claim of bad-faith denial of insurance benefits requires proof of two elements: (1) that the insurance company "had no reasonable basis for denying the plaintiff's claim" and (2) "the defendant knew or had reason to know that its denial or refusal was without a reasonable basis." *Bellville v. Farm Bureau Mut. Ins. Co.*, 702 N.W.2d 468, 473 (Iowa 2005). "The first element is an

objective one; the second element is subjective." *Id.* A court may find as a matter of law that the defendant had a reasonable basis if the claim is "fairly debatable." *Id.* A claim is fairly debatable if "it is open to dispute on any logical basis"—that is, "if reasonable minds can differ on the coverage-determining facts or law." *Id.* If "the undisputed record show[s] that [the plaintiff] could not establish that [the insurer] had 'no reasonable basis' for denying coverage," a grant of summary judgment for the insurer is appropriate. *Liberty Mut. Ins. Co. v. Pella Corp.*, 650 F.3d 1161, 1177-78 (8th Cir. 2011). "Whether evidence is sufficient to create an issue of fact for the jury to decide is a question of law." *Chadima v. Nat'l Fid. Life Ins. Co.*, 55 F.3d 345, 349 (8th Cir. 1995).

Paulino first argues that summary judgment was improper because a reasonable jury could find that Chartis did not make an honest and informed judgment in denying his claim for benefits. Stated another way, Paulino argues that there remains a genuine issue of material fact as to whether his claim was fairly debatable and thus whether Chartis had a reasonable basis for denying Paulino's claim. We disagree, finding that the text of the statute and relevant case law rendered the claim fairly debatable and accordingly provided a reasonable basis for denial.

When an employee suffers an injury that is compensable under Iowa Code chapter 85, an employer must "furnish reasonable surgical, medical, dental, osteopathic, chiropractic, podiatric, physical rehabilitation, nursing, ambulance and hospital services and supplies therefor and shall allow reasonably necessary transportation expenses incurred for such services." Iowa Code § 85.27(1). "Reduced to its essentials, section 85.27 requires an insurer to furnish reasonable medical services and supplies *and* reasonable and necessary appliances to treat an injured employee." *Stone Container Corp. v. Castle*, 657 N.W.2d 485, 490 (Iowa 2003). Section 85.27, on its face, requires an insurance company to pay for medical services and supplies and for necessary appliances, not necessarily for living expenses, such as rent, utilities, groceries, and cable television, incurred by an injured

-4-

worker. Paulino nevertheless argues that Chartis had no reasonable basis to deny his claim because the Iowa Supreme Court historically has interpreted section 85.27 broadly. Paulino rests this argument on three Iowa Supreme Court cases: *Manpower Temporary Services v. Sioson*, 529 N.W.2d 259 (Iowa 1995); *Quaker Oats Co. v. Ciha*, 552 N.W.2d 143 (Iowa 1996); and *Castle*, 657 N.W.2d 485. In each of these three cases, the Iowa Supreme Court held that certain nonmedical expenses were compensable under section 85.27. *See Sioson*, 529 N.W.2d at 264 (affirming decision requiring employer to pay for modified van for injured employee); *Ciha*, 552 N.W.2d at 154-55 (affirming decision requiring payment for widened doorways, ramp into home, special shower, elevator, and other items necessitated by plaintiff's wheelchair-bound status); *Castle*, 657 N.W.2d at 488, 492 (affirming decision mandating payment for laptop computer and corresponding adaptations that would allow employee to use the computer with his wheelchair and prone cart).

That the Iowa court ultimately found Paulino to be "a prisoner of his injuries" like the claimants in these cases and affirmed the Commissioner's decision requiring Chartis to pay Paulino's nonmedical living expenses does not undermine the district court's grant of summary judgment based on the fairly debatable nature of Paulino's bad-faith claim. As the Iowa Supreme Court noted in *Bellville v. Farm Bureau Mutual Insurance Co.*, "[t]he fact that the insurer's position is ultimately found to lack merit is not sufficient by itself to establish the first element of a bad faith claim." 702 N.W.2d at 473. Rather, "[t]he focus is on the existence of a debatable issue, not on which party was correct." *Id.* The expenses Paulino claimed included his rent, utilities, groceries, and cable television during his extended stay at CCS. It is not readily apparent that these living expenses are similar to the medical services and supplies listed in section 85.27 or to the appliances found to be compensable in the Iowa Supreme Court cases. Both the Commissioner and the Iowa court noted that such living expenses generally are not the responsibility of an employer under section 85.27. Moreover, the Deputy Commissioner found these costs to be more like the nonmedical expenses denied to the claimant in *Sioson*. 529 N.W.2d at 264 (affirming

decision requiring that employer to pay for a modified van—"merely an extension of [the claimant's] 300-pound wheelchair"—but denying claimant's demand for payment of related expenses such as title, insurance, fuel, and repairs because these costs were "not matters of medical necessity"). The Deputy Commissioner's interpretation is reasonable, and nothing in the other cases Paulino cites—*Ciha* and *Castle*—expressly undermines this view. The *Ciha* court affirmed the award of expenses for modifications to the claimant's van and home after finding that such conversions were "merely . . . extension[s] of Ciha's wheelchair." 552 N.W.2d at 154-55. The *Castle* court likewise affirmed an award of funds for a computer, finding that it was "comparable to the van in *Sioson* and *Ciha* [in that] it provides Castle with access to the outside world." 657 N.W.2d at 492. Neither holding speaks to a requirement of payment of a claimant's general living expenses. Further, the Deputy Commissioner's agreement with Chartis's interpretation of the cases bolsters the argument that Paulino's claim was fairly debatable. "After all, if an impartial judicial officer informed by adversarial presentation has agreed with the insurer's position, it is hard to argue that the insurer could not reasonably have thought that position viable." *Rodda v. Vermeer Mfg.*, 734 N.W.2d 480, 485 (Iowa 2007) (quoting William T. Barker & Paul E.B. Glad, *Use of Summary Judgment in Defense of Bad Faith Actions Involving First-Party Insurance*, 30 Tort & Ins. L.J. 49, 83 (1994)). Accordingly, we agree with the district court's conclusion that there was no genuine issue of material fact as to whether Paulino's claim was fairly debatable.

Paulino next argues that the record showed Chartis's denial was not motivated by the fairly debatable nature of the claim but rather by his status as an undocumented Mexican national, thus making summary judgment for Chartis improper. We disagree. Though Paulino makes much of the fact that Chartis investigated his status as an undocumented foreign national, such inquiry does not lead to Paulino's conclusion that Chartis sought to have him deported to avoid paying his claim. Paulino's immigration status affected his eligibility for certain benefits, such as social security and federal housing, considerations highly relevant to his Chartis case

manager's search for suitable permanent housing. Moreover, an Assistant Vice President of Workers' Compensation at Chartis, during his deposition, and Paulino's counsel at oral argument acknowledged that Chartis would remain responsible for payments even if Paulino were deported, thus rendering any dispute surrounding the issue immaterial. *Cf. Iowa Erosion Control, Inc. v. Sanchez*, 599 N.W.2d 711, 715 (Iowa 1999) (collecting cases suggesting immigration status has no bearing on entitlement to workers' compensation benefits). In any event, "a defendant can defeat a bad-faith claim by showing that it had only one reasonable basis for denying coverage—not by proving that all of its coverage positions were reasonable." *Liberty Mut. Ins. Co.*, 650 F.3d at 1177. Paulino thus failed to produce sufficient evidence from which a reasonable jury could conclude that Chartis had no reasonable basis for withdrawing payment authorization for living expenses as of May 6, 2006.

Paulino's final argument—that Chartis acted in bad faith by failing to pay the expenses after the Commissioner's reversal in July 2008—is unavailing. Chartis took no new action to deny benefits in the wake of the Commissioner's decision; rather, it requested judicial review, exercising its appellate right under Iowa Code § 17A.19. Given the fairly debatable nature of Paulino's claim, Chartis's nonpayment pending this additional review did not constitute bad faith. *See Weitz Co. v. Johnson*, 779 N.W.2d 494 (Iowa Ct. App. 2010) (unpublished table decision) (finding no bad-faith denial of benefits occurred even after Worker's Compensation Commissioner issued decision requiring payment because claim continued to be fairly debatable). We thus agree with the district court that Paulino raised no genuine issue of material fact as to whether Chartis had a reasonable basis to deny benefits pending the Iowa court's review.

## III.

For the foregoing reasons, we affirm the district court's grant of summary judgment.

_____