# IN THE COURT OF APPEALS OF IOWA

No. 17-0267
Filed February 7, 2018

**NESTLÉ USA and INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,**
    Plaintiffs-Appellants/Cross-Appellees,

**vs.**

**ALLEN CONELL,**
    Defendant-Appellee/Cross-Appellant.
_____

Appeal from the Iowa District Court for Polk County, Bradley McCall, Judge.


An employer appeals and an employee cross-appeals the district court decision affirming in part and reversing in part a decision of the Iowa Workers' Compensation Commissioner. **AFFIRMED ON BOTH APPEALS.**



Joseph M. Barron and Timothy W. Wegman of Peddicord, Wharton, Hook & Spencer, P.C., West Des Moines, for appellants.

Jean Mauss of Schott Mauss & Associates, P.C., Des Moines, for appellee.


Heard by Vaitheswaran, P.J., and Doyle and Bower, JJ.

**VAITHESWARAN, Presiding Judge.**

An employee severely injured his left hand in a work-related accident. The workers' compensation commissioner denied his request for a passive prosthetic hand. In this appeal and cross-appeal, the employer challenges the district court's reversal of the prosthetic-hand denial and other aspects of the commissioner's decision. The employee challenges the weeks used by the commissioner to calculate his weekly benefit rate.

## I. *Background Facts and Proceedings*

Nestle USA hired Allen Conell to repair machines at its plant in Waverly, Iowa. When a bag-sealing machine jammed, Conell tried to clear the jam and a 385-degree sealing clamp "closed on" his left hand. Because Nestle failed to reinstall a release mechanism after converting the machine's mechanical operation to an electronic operation, Conell was forced to manually take apart the machine to get his hand out. He was unable to complete the task alone, yelled for help, and instructed two other mechanics on how to loosen the clamp. Conell lost track of time but, somewhere between five and twenty minutes later, he removed his hand, only to find that it looked like "somebody had taken candle wax and poured it over a stick."

Conell was rushed to a hospital for emergency treatment. He underwent several surgeries on his hand and shoulder. Conell was later diagnosed with neck pain, post-traumatic stress disorder (PTSD), and depression. Nestle disputed a causal connection between the neck injury and the work accident and disputed the permanency of the mental health diagnoses.

Nestle did not dispute compensability for Conell's hand injury and approved payment for a mechanical prosthetic device that allowed him to manipulate his thumb and index finger. Conell was only able to use the mechanical hand for three to four hours a day. The unwieldy hand caused him emotional distress. According to a psychologist who evaluated him, he "was quite avoidant of the general public because of his emotional pain at being regarded as a Frankenstein figure with a visibly damaged hand." To address these issues, Conell asked Nestle to also provide a passive prosthetic left hand "that looked like a natural hand."

A deputy workers' compensation commissioner considered Connell's request for this device as well as his claim for weekly workers' compensation benefits. Following an arbitration hearing, the deputy characterized Conell's disabilities as follows: "The physical disabilities are devastating, and may render claimant totally disabled even without consideration of the mental disability. When combined with his mental disability, however, there can be no doubt." The deputy determined Conell's neck pain "appear[ed] to be related to his original injury" and ordered further evaluation of the condition; found a causal connection between Conell's PTSD and depression and his work injury and found the conditions to be permanent; and ordered the payment of permanent total disability benefits as well as payment for a passive prosthetic hand. The deputy declined Conell's request to replace two low-hourly work weeks in calculating his weekly benefit amount.

On intra-agency appeal, the commissioner concluded Conell's "work injury caused permanent disability to [his] neck and to [his] mental state in addition to permanent disability to [his] left hand, arm and shoulder." The commissioner affirmed the award of permanent total disability benefits. The commissioner

reversed the deputy's award of a passive prosthetic hand after concluding the award failed to comport with a provision of the Iowa Workers' Compensation statute. In a rehearing decision, the commissioner found "[t]he average of the 13 weeks preceding the injury [was] the best evidence of [Conell's] customary hours," and declined to exclude the two low-hourly weeks from the benefit calculation. Both sides sought judicial review.

The district court reversed the commissioner's denial of the prosthetic hand but otherwise affirmed the final agency decision. Nestle appealed and Conell cross-appealed.

## II.    Nestle's Appeal

Nestle contends (A) "the district court erred in reversing the commissioner's refusal to award an additional prosthetic device," (B) the commissioner erred in concluding Conell's neck condition was causally related to the accident, (C) the commissioner erred in concluding Conell reached maximum medical improvement on his post-traumatic distress and depression conditions, and (D) the commissioner erred in awarding permanent total disability benefits.

### A.    Passive Prosthetic Hand

Iowa Code section 85.27 obligates an employer "to furnish reasonable services and supplies to treat an injured employee." Iowa Code § 85.27(4) (2013). Section 85.27(1) states:

> The employer, for all injuries compensable under this chapter or chapter 85A, shall furnish reasonable surgical, medical, dental, osteopathic, chiropractic, podiatric, physical rehabilitation, nursing, ambulance and hospital services and supplies therefor and shall allow reasonably necessary transportation expenses incurred for such services. The employer shall also furnish *reasonable and necessary* crutches, artificial members and appliances *but shall not*

*be required to furnish more than one set of permanent prosthetic devices.*

(Emphasis added.) "Reduced to its essentials, section 85.27 requires an insurer to furnish reasonable medical services and supplies *and* reasonable and necessary [crutches, artificial members, and] appliances to treat an injured employee." *Stone Container Corp. v. Castle,* 657 N.W.2d 485, 490 (Iowa 2003).

The commissioner did not focus on the "reasonable and necessary" language of section 85.27(1) but on the "one set" language. The commissioner interpreted "one set" to mean that an injured employee could only receive "one permanent prosthetic device for each particular entitlement." The commissioner provided the following reasoning:

> The words "one set" obviously were included for those cases in which a particular claimant requires prosthetic devices for the loss of more than one body part resulting from a single injury. For example, if a worker sustains an injury resulting in the loss of both legs, that worker is entitled to a separate prosthetic device for each leg. In such a situation, the "one set" of permanent prosthetic devices would necessarily need to include two such devices. If the words "one set" were left out of section 85.27, it would lead to the absurd result that a worker is entitled to only one prosthetic device even though the worker needed a separate prosthesis for each leg.
> . . . .
> If "one set" is interpreted in this case to mean more than one prosthetic device for [Conell's] left hand the statutory limitation contained in section 85.27(1) is meaningless because one could come up with additional situations for which [Conell] might find it desirable to be provided with additional prostheses for his hand.

The district court disagreed with this interpretation. After canvassing precedent, the court determined a passive prosthetic hand was "a necessary part of [Conell's] care and an extension of his prosthetic." The court concluded the commissioner's decision was irrational and failed to consider relevant facts or was an "irrational, illogical or wholly unjustifiable application of law to the facts."

On appeal, Nestle argues "the statute is clear." In its view, Conell was not entitled to more than one permanent prosthetic device for his left hand because "the word 'set' logically means a situation in which two separate prosthetic devices are required for different body parts that were injured in the same compensable injury, as recognized by the Commissioner."

This court reviews the district court decision to determine whether we would reach the same result as the district court. *Gits Mfg. Co. v. Frank*, 855 N.W.2d 195, 197 (Iowa 2014). "In recent years, we have repeatedly declined to give deference to the commissioner's interpretations of various provisions in chapter 85." *JBS Swift & Co. v. Ochoa*, 888 N.W.2d 887, 892 (Iowa 2016) (quoting *Iowa Ins. Inst. v. Core Grp. of Iowa Ass'n for Justice*, 867 N.W.2d 58, 65 (Iowa 2015)); *see also* Iowa Code § 17A.19(11)(b). We are permitted to "substitute our own interpretation [of section 85.27(1)] if we find the commissioner's interpretation was erroneous." *Burton v. Hilltop Care Ctr.*, 813 N.W.2d 250, 261 (Iowa 2012). We review the agency's application of law to fact that has clearly been vested by a provision of law in the discretion of the agency to determine whether it is "irrational, illogical, or wholly unjustifiable." Iowa Code § 17A.19(10)(m).

The district court was correct in rejecting the commissioner's interpretation of section 85.27(1) and his application of law to fact. For all practical purposes, the passive hand and the mechanical hand were a single device, to be used interchangeably in a twenty-four hour day, depending on Connell's needs. As the district court stated, the passive prosthetic hand was simply an extension of the mechanical prosthetic hand. *See Quaker Oats Co. v. Ciha*, 552 N.W.2d 143, 156 (Iowa 1996) ("[W]e believe the specific home modifications and van conversion are

merely an extension of Ciha's wheelchair."); *Manpower Temp. Servs. v. Sioson*, 529 N.W.2d 259, 264 (Iowa 1995) ("[T]he van is merely an extension of Miya's 300-pound wheelchair. Without a van she is, more than need be, a prisoner of her severe paralysis.").

The mechanical prosthetic hand was a reasonable and necessary permanent prosthetic device but only for a fraction of Connell's day. As Connell testified,

> My hand will start to swell and, number two, where the zipper is . . . it will literally start pinching my skin right through there (indicating) . . . . And plus, the weight gets to me after a while and starts hurting the shoulder, because after a while this thing feels like 50 pounds.

When used in public, the mechanical hand also exacerbated Conell's PTSD and depression by generating "stare[s]" and "comments." The passive prosthetic hand alleviated these concerns.

Because the two prosthetic hands worked in tandem, the commissioner's reliance on the "one set" language was misplaced. Conell did not ask for two fully functional artificial left hands; he asked for one hand that would allow him to manipulate his finger and thumb on a limited basis and another hand that would allow him to look like a "normal" person the rest of the day—in other words, two devices which, together, formed a single, fully-functional hand. *See Castle*, 657 N.W.2d at 491-92 ("[A]n expense falls within the scope of section 85.27 if it covers the cost of a device that replaces a function lost by the employee as a result of the employee's work-related injury. . . . [I]t is the end function that is important; an appliance, whatever its form, is simply a means to get there."); *see also* Iowa Admin. Code r. 876-8.5(85) (defining "appliances" as "hearing aids, corrective

lenses, orthodontic devices, dentures, orthopedic braces, *or any other artificial device used to provide function or for therapeutic purposes*" (emphasis added)). Conell was entitled to the passive prosthetic hand and we affirm the district court's reinstatement of the deputy commissioner's decision requiring Nestle to provide the device.

### B.    Causation – Neck Injury

Nestle contends the evidence is insufficient to support the commissioner's finding of a work-related neck injury.  To the contrary, the finding of a causal connection was supported by substantial evidence.  *See* Iowa Code § 17A.19(10)(f); *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011) ("We will therefore only disturb the commissioner's finding of medical causation if it is not supported by substantial evidence.").

A physician who performed an independent medical evaluation opined the work incident "was at least a substantial aggravating factor in bringing about [Conell's] cervical spine symptoms."  Although Conell testified he "never complained about [his neck pain]," he consistently reported shoulder pain in the months following the workplace accident and stated he "always thought [his neck pain] was related to the shoulder" injury.  We affirm the commissioner's finding of a causal connection between the neck pain and the accident.

### C.    Permanency – PTSD and Depression

Nestle contends the commissioner erred in awarding Conell permanent total disability benefits because, in its view, "[W]e simply do not know at this

juncture whether [Conell's] mental condition (permanent or not) is supportive of an award of permanent total disability benefits." Nestle cites the independent medical evaluation for this proposition. But the evaluator simply "defer[red]" this issue to the mental health professionals because it was not within her "area of expertise."

The mental health professional who evaluated Conell stated, "Both the PTSD and the depression are permanent, with possible variations of intensity depending on circumstances in his life." Her opinion amounts to substantial evidence in support of the commissioner's finding that Conell's mental health conditions were permanent. We affirm the finding.

### D.        Sufficiency of the Evidence

Nestle contends the evidence does not support an award of permanent total disability benefits. To the contrary, the record contains more than substantial evidence of a permanent total disability, and we affirm the award of permanent total disability benefits.

### III.      Conell's Appeal – Benefit-Rate Calculation

In the thirteen weeks preceding his work injury, Conell worked an average of 64.96 hours per week, with two low weeks of forty-four hours. Conell contends the commissioner should have replaced the two forty-four-hour weeks in calculating his weekly benefit rate.

Iowa Code section 85.36(6) requires the consideration of "customary earnings" in calculating weekly earnings:

> In the case of an employee who is paid on a daily or hourly basis, or by the output of the employee, the weekly earnings shall be computed by dividing by thirteen the earnings of the employee earned in the employ of the employer in the last completed period of thirteen consecutive calendar weeks immediately preceding the

> injury. . . . *A week which does not fairly reflect the employee's customary earnings shall be replaced by the closest previous week with earnings that fairly represent the employee's customary earnings.*

(Emphasis added.) "[T]he determination of whether wages are customary under the circumstances is a matter expressly committed by section 85.36(6) to the discretion of the commissioner." *Jacobson Transp. Co. v. Harris*, 778 N.W.2d 192, 200 (Iowa 2010). Our review is to determine whether the commissioner's determination was an "illogical, irrational, or wholly unjustifiable" application of law to fact. *Id.* Given the wide fluctuation in Conell's weekly work hours, it was not "illogical, irrational, or wholly unjustifiable" to leave in all of the weeks, including the lowest-wage weeks. The commissioner reasonably concluded, "The average of the 13 weeks preceding the injury [was] the best evidence of [Conell's] customary hours."

We affirm the district court's judicial review ruling, which affirmed all aspects of the commissioner's decision except the commissioner's denial of the passive prosthetic hand, reversed the denial, and reinstated the deputy commissioner's decision requiring Nestle to provide the hand.

**AFFIRMED ON BOTH APPEALS.**