# IN THE COURT OF APPEALS OF IOWA

No. 18-0336
Filed March 6, 2019

**RICHARD HUFF,**
        Petitioner-Appellee,

**vs.**

**CRST EXPEDITED, INC. a/k/a CRST INTERNATIONAL and AIG INSURANCE COMPANY,**
        Respondents-Appellants.
_____

Appeal from the Iowa District Court for Polk County, Arthur E. Gamble, Judge.

Petitioners appeal the district court's ruling reversing and remanding the decision of the Iowa Workers' Compensation Commission. **AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**

Chris Scheldrup of Scheldrup Blades Schrock Smith PC, Cedar Rapids, and Jason P. Wiltfang of Corridor Law Group, Cedar Rapids, for appellants.

R. Saffin Parrish-Sams of Soldat & Parrish-Sams, PLC, West Des Moines, for appellee.

Heard by Vogel, C.J., Vaitheswaran, J., and Danilson, S.J.* Gamble, S.J. takes no part.

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2019).

**VOGEL, Chief Judge.**

CRST Expedited, Inc. and AIG Insurance Co. (collectively, CRST) appeal the ruling by the district court reversing and remanding Richard Huff's alternate-care decision of the Iowa Workers' Compensation Commission. CRST asserts the court erred in finding medical evidence is not required for an award of alternate care under Iowa Code section 85.27 (2017). It further asserts Huff is not entitled to the specific appliances and services he seeks. We agree with the district court that the lack of medical evidence is not a bright-line bar to an award of alternate-medical-care benefits. However, the court's determination that the specific appliances and services Huff requests are available to him relies on factual findings that must be made by the agency. Because the agency used the wrong legal standard, the case must be remanded for the agency to make factual determinations, notwithstanding the lack of medical evidence to support his requests. Therefore, we affirm the district court in part and reverse in part, and we remand to the agency.

## I. Background Facts and Proceedings

Richard Huff began working for CRST as an over-the-road truck driver in 2014. According to his testimony, he did not have a fixed home or a personal vehicle while he worked for CRST because the mortgage on his home had been foreclosed and he had given his vehicle to his son. To save on expenses, he lived out of his truck and used his truck or a taxicab for personal transportation. On April 24, 2016, he was involved in a trucking accident.[1] His application for alternate

---

[1] CRST does not dispute liability on Huff's workers' compensation claim; it has provided Huff with weekly benefits and medical care, including several surgeries and

medical care states he sustained numerous injuries in the accident, "including a crush injury to his right leg, causing him to remain wheelchair dependent and homebound." When he was discharged from the hospital on July 12, he testified he lived with his son in Georgia in a second-floor apartment for college students.

On May 25, 2017, Huff filed his first application for alternate care. His application requested: "1) a handicap accessible/ADA compliant living arrangement near [his surgeon in Georgia]; 2) a handicap van or alternative means of transportation for any and all reasonable purposes; and 3) a home healthcare provider and/or in-home and community-based ADL [(activities-of-daily-living)] assistance." He submitted certain records to support his application, including a "Comprehensive Adult Assessment," dated July 29, 2016, which evaluated his abilities to perform activities of daily life and was signed by a registered nurse.

On June 9, 2017, the parties participated in a telephone hearing before the agency. According to Huff's testimony, he typically uses a wheelchair to move short distances. He can walk with crutches for ten to fifteen minutes at a time, but he has "been falling a lot lately" with crutches. He has lived alone in the apartment since December when his son moved out, and he expects to be evicted soon. He has difficulty performing many daily activities due to his injury, including bathing, cooking, and cleaning. He usually pays for a taxicab when he needs transportation.

On June 12, the agency issued its first alternate-medical-care decision. Finding "none of Huff's current medical providers have opined that Huff needs an

---

hospitalizations. On February 2, 2017, Huff filed a separate petition to determine medical benefits.

accessible apartment, accessible van, or home health aide services at this time," the agency concluded Huff failed to meet his burden of proof and denied his application. Huff applied for rehearing, which the agency denied.

On July 21, Huff filed a second, nearly identical application for alternate medical care, again requesting housing, transportation, and in-home assistance.[2] Huff submitted the evidence and a transcript from the first proceeding, and he submitted an "Assessment" for activities of daily living, dated June 22, 2017, from the Coastal Regional Commission of Georgia—Area Agency on Aging (GRCG—AAA) describing Huff's needs.[3] He did not testify again, though his attorney stated at the August 3 hearing Huff had been evicted from his apartment and was now difficult to contact.

On August 4, the agency issued its second alternate-medical-care decision, which again denied his application:

> Home modifications, modified vehicles, transportation, and nursing services may be covered expenses under Iowa Code section 85.27. *See Quaker Oats Co. v. Ciha*, 552 N.W.2d 143, 154–58 (Iowa 1996) . . . . Unlike Ciha, none of Huff's current medical providers have opined that Huff needs a "1) wheelchair accessible/ADA compliant living arrangement near [his surgeon in Georgia]; 2) a handicap van or alternative means of transportation for any and all reasonable ADLs; and 3) home healthcare and/or in-home community-based ADL assistance."

---

[2] In the hearing for the second proceeding, Huff's attorney clarified his requested care, asking CRST to, at minimum: (1) "help him locate [a] wheelchair-accessible living situation and pay the difference between his [most recent] rent of $370 a month and the more expensive cost of wheelchair-accessible housing"; and (2) make their current medical "transportation service available once a week so he can go to the grocery store and buy groceries."

[3] Huff also submitted a printout from a Georgia state government website, which describes the GRCG—AAA as "striv[ing] to develop a comprehensive, coordinated system of services which promotes the independence and well-being of older adults, those with disabilities and their caregivers, and to provide these individuals with information and access to needed services."

Huff has provided an assessment for [home- and community-based] services in Georgia. No information was presented at hearing concerning the qualifications of the person who performed the assessment. No document has been provided from a physician documenting Huff has a need for home and community based waiver or other services.

In the first hearing Huff did not present evidence he has a medical need for assistance with dressing changes, toileting, repositioning, or transfers, clear nursing services covered by the statutes, as opposed to general care services including dressing, bathing, and feeding. *Ciha*, 552 N.W.2d at 156. No additional evidence was received from a medical provider concerning such a need at the second hearing. Huff has not cited to any authority supporting that an employer may be responsible for paying for the cost of an apartment or for locating an apartment. Huff has not met his burden of proof in this case.

Huff again applied for rehearing, which the agency again denied.

Huff timely petitioned for judicial review of both alternate-care decisions. Upon Huff's motion, the district court consolidated both petitions into the current action. On February 6, 2018, the court issued its ruling, finding "evidence from a medical provider" is not required for Huff's requests to be considered by the agency. It then went a step further to find Huff's requests for handicap-accessible housing, transportation, and an in-home aide fall under the definition of allowable "appliances" or "services" in Iowa Code section 85.27(1). Accordingly, the court reversed and remanded to the agency "for reconsideration of Huff's Petitions for Alternate Medical Care in a manner consistent with this opinion." CRST now appeals.

## II.     Standard of Review

We review decisions of the Iowa Workers' Compensation Commission under Iowa Code chapter 17A (2017). "We apply the standards of section 17A.19(10) to the [agency's] decision and decide whether the district court

correctly applied the law in exercising its judicial review function." *Lakeside Casino v. Blue*, 743 N.W.2d 169, 172–73 (Iowa 2007). "In determining the proper standard of review, we must first identify the nature of the claimed basis for reversal of the [agency's] decision." *Id.* at 173.

Huff initially sought to reverse the agency's decision under several standards of review, and the district court ultimately reversed the decision based on its interpretation of Iowa law. The level of deference we give to an agency's interpretation of law depends on whether the legislature clearly vested the agency with authority to interpret the law. *Ramirez-Trujillo v. Quality Egg, L.L.C.*, 878 N.W.2d 759, 768–69 (Iowa 2016). This appeal concerns Iowa Code section 85.27(4), which our supreme court has previously determined is not within the agency's authority to interpret. *Id.* at 769–70. Accordingly, we do not defer to the agency here and will reverse if its interpretation was erroneous.[4] Iowa Code § 17A.19(10)(c).

### III. Analysis

When an employer is liable for an employee's injury, "the employer is obliged to furnish reasonable services and supplies to treat an injured employee, and has the right to choose the care." *Id.* § 85.27(4). However, if the employee is dissatisfied with the care the employer offers, the employee may request "alternate care reasonably suited to treat the injury." *Id.* "If the employer and employee cannot agree on such alternate care, the commissioner may, upon application and

---

[4] Huff also challenges the agency's decision under Iowa Code section 17A.19(10)(h), (i), (j), (k), (m), and (n). As our review under Iowa Code section 17A.19(10)(c) is dispositive, we do not consider these other grounds.

reasonable proofs of the necessity therefor, allow and order other care." *Id.* A hearing on alternate care must be "prompt" and "informal." *Bell Bros. Heating & Air Conditioning v. Gwinn*, 779 N.W.2d 193, 204 (Iowa 2010); *see also* Iowa Code § 85.27(4) (requiring the agency to issue a decision within ten or fourteen working days of receiving an application for alternate care, depending on whether the claimant requests a hearing via telephone or in person). Under this system, an employee is entitled to alternate medical care when he or she "establishes the care furnished by the employer was unreasonable." *Gwinn*, 779 N.W.2d at 203. "Determining what care is reasonable under the statute is a question of fact." *Long v. Roberts Dairy Co.*, 528 N.W.2d 122, 123 (Iowa 1995).

### A. Role of Medical Evidence

Both decisions from the agency indicate medical evidence is required for an employee to succeed on an application for alternate medical care.[5] Medical evidence is normally required for a worker's compensation claim. *See, e.g.*, *Dunlavey v. Econ. Fire & Cas. Co.*, 526 N.W.2d 845, 853 (Iowa 1995) ("Whether an injury has a direct causal connection with the employment or arose independently thereof is essentially within the domain of expert testimony."). However, CRST points to no provision of law, and we cannot find such a provision, requiring the claimant to provide medical evidence to support his request for alternate care or that the care provided through the employer is unreasonable. A

---

[5] It is unclear exactly what type of medical evidence the agency believed was required, as the second decision refers to a lack of evidence from "current medical providers," "a physician," and "a medical provider." Furthermore, to the extent the agency wanted to examine medical evidence, we note the first proceeding included a "Comprehensive Adult Assessment" that was signed by a nurse, and the second proceeding included an "Assessment" from an agency with a stated goal of helping individuals with disabilities find needed services.

request for alternate care only requires "reasonable proofs of the necessity therefor." *Id.* § 85.27(4); *see also Long*, 528 N.W.2d at 124 ("[T]he employer's obligation under the statute turns on the question of reasonable necessity, not desirability."). Therefore, the agency erroneously interpreted Iowa law when it determined medical evidence is required in an alternate-care proceeding. *See* Iowa Code § 17A.19(10)(c).

We recognize medical evidence is normally provided to the agency. A claimant may find it difficult to show "reasonable proofs of the necessity" of alternate care without medical evidence. *See id.* § 85.27(4). However, the absence of medical evidence cannot be a bright-line, legal bar to an award of alternate care. Our supreme court has recognized medical evidence is not required in an alternate-care proceeding "to make apparent the effect . . . of . . . undeniable injuries," nor is it required to conclude the requested care would replace "the function lost . . . as a result of [the] injuries." *Stone Container Corp. v. Castle*, 657 N.W.2d 485, 492 (Iowa 2003). CRST argues *Castle* does not apply because the claimant therein "sustained horrific injuries that can in no way compare to Huff's situation." *See id.* at 487–88 (stating Castle "lost both his legs at the hip joint, as well as his buttocks, rectum and a testicle," and he "is very sensitive to temperature due to his" injuries). This argument is factual, not legal. It is the agency's responsibility to determine whether the evidence Huff provided constitutes "reasonable proofs of the necessity" of the requested care. *See* Iowa Code § 85.27(4).

### B. Factual Determinations

Regardless of the need for medical evidence, CRST argues the care Huff requested is not allowed under Iowa Code section 85.27(1) as a matter of law. Available care includes "appliances" and "nursing" services. Iowa Code § 85.27(1). "An appliance has been held to be a device that serves to replace a physical function lost by the injury." *Ciha*, 552 N.W.2d at 154. "Nursing" services are professional services and do not include services from "cooks, chambermaids, etc., employed in purely ministerial and administrative functions." *Henry v. Iowa-Illinois Gas & Elec. Co.*, 522 N.W.2d 301, 303 (Iowa 1994).

Although the district court remanded the case to the agency, it found Huff's requests for housing and transportation qualify as "appliances" and at least some of his requests for in-home assistance qualify as "nursing" services. The district court's findings improperly rely on factual determinations the agency never made. *See Meads v. Iowa Dep't of Social Servs.*, 366 N.W.2d 555, 559–60 (Iowa 1985) ("The district court may only review issues considered and decided by the agency. Findings of an agency on each issue are a prerequisite to judicial review."). Therefore, we do not and cannot offer an opinion on whether any of the care requested is allowable as "appliances" or "services" under Iowa Code section 85.27(1). We simply note the case law affirming various awards of care. *See Castle*, 657 N.W.2d at 492 (affirming the award of a computer in an alternate-care proceeding); *Ciha*, 552 N.W.2d at 156–57 (affirming the award of home modifications, van modifications, and in-home nursing services); *Manpower Temp. Servs. v. Sioson*, 529 N.W.2d 259, 264 (Iowa 1995) (affirming the award of a van in an alternate-care proceeding).

**IV.    Conclusion**

We affirm that part of the district court ruling that finds the lack of medical evidence is not a bright-line bar to an award of alternate-medical-care benefits. We reverse that part of the district court ruling that finds the specific care Huff requests is available as "appliances" or "services."  We remand to the agency to make factual determinations on each of Huff's requests, without the legal requirement each request must be supported with medical evidence.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**